**Ronald BULLOCK and Vonnie T. Hudson, Plaintiffs,**

v.

**The CREDIT BUREAU OF GREATER INDIANAPOLIS, INC., doing business as Credicheck Inc. and Richard B. Gonon, Defendants.**

**No. IP 00–1101–C H/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 10, 2003.

Daniel A. Edelman, Edelman, Combs & Latturner, Chicago, IL, Donn H. Wray, Stewart & Irwin (local counsel), Indianapolis, IN, for plaintiffs.

Peter A. Velde, Kightlinger & Gray, for Defendant Credit Bureau of Indianapolis.

Thomas J. Grau, Indianapolis, IN, for Defendant Richard B. Gonon.

### ENTRY ON DEFENDANT GONON'S MOTION TO DISMISS

HAMILTON, District Judge.

Plaintiffs Ronald Bullock and Vonnie Hudson have filed this putative class action against defendants The Credit Bureau of Greater Indianapolis, Inc., doing business as Credicheck Inc. ("Credicheck") and attorney Richard B. Gonon. Plaintiffs assert claims under federal and state law regarding so-called "payday loans." The case is now before the court on defendant Gonon's motion to dismiss the claims against him for lack of subject matter jurisdiction. As

explained below, the motion to dismiss is granted. Plaintiffs' claims against Gonon amount to collateral attacks on final judgments in the Indiana state courts. Under the *Rooker–Feldman* doctrine, this court does not have subject matter jurisdiction over these claims that seek, as a practical matter, what amounts to appellate review of state court judgments. See *Epps v. Creditnet, Inc.*, 320 F.3d 756, 760–61 (7th Cir.2003).

 Gonon has brought what amounts to a "facial" challenge to subject matter jurisdiction, basing his motion only on the allegations of the second amended complaint. Accordingly, the court takes the well-pleaded allegations as true, giving plaintiffs the benefit of reasonable inferences from those allegations. See, *e.g., Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir.1999); *Capitol Leasing Co. v. Federal Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir.1993); accord, *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 & n. 2 (7th Cir.2002) (court may limit consideration to plaintiff's allegations or, if jurisdictional facts are in doubt, may take any appropriate steps to determine necessary facts).

Plaintiffs allege in their second amended complaint that in 1999 they obtained so-called "payday loans" from Credicheck (actually, its assignor) and then defaulted on those loans. Payday loans are short term loans of modest amounts ($200 for Bullock and $180 for Hudson) with charges that typically produce interest rates of several hundred percent per year. See *Smith v. Steinkamp*, 318 F.3d 775, 775–76 (7th Cir. 2003). As is customary, the plaintiffs gave the lender post-dated checks for the principal and fees that would come due. Plaintiffs failed to pay off or renew their loans. Credicheck then presented the checks for payment, and they were dishonored.

Credicheck then hired attorney Gonon, who filed suit against both Bullock and Hudson in a small claims division of an Indiana state trial court. The suits sought treble damages and attorney fees, relying upon Ind.Code § 34–4–30–1 (now codified as § 34–24–3–1), which authorizes such civil remedies for criminal conduct that causes pecuniary injury to another person.[1]

Gonon, on behalf of Credicheck, obtained a judgment against Bullock on September 23,1999 for the total amount of $1,191 which included treble damages, a $100 collection charge, and attorney's fee. Similarly, Gonon obtained a judgment on behalf of Credicheck against Hudson on

---

1. It is not clear from this record whether Credicheck gave plaintiffs notice that their checks had been dishonored and an opportunity to cure the dishonor. Indiana law provides:

> The fact that a person issued or delivered a check, a draft, or an order, payment of which was refused by the drawee, constitutes prima facie evidence that the person knew that it would not be paid or honored. Ind.Code § 35–43–5–5(c) (crime of check deception). Proof of the crime of check deception also requires proof that the drawer was sent a written notice of the dishonor and a demand for payment within ten days, and that the drawer then failed to pay in response to the notice. Ind.Code § 35–43–5–5(e); *Commercial & Medical Accounts Services, Inc. v.*

*Mackintosh*, 662 N.E.2d 659, 660 & n. 2 (Ind. App.1996). Proof of such notice is also required in a civil action for treble damages under Ind.Code § 34–24–3–1. *Commercial & Medical Accounts Services*, 662 N.E.2d at 660–61 (citing prior codification of civil remedy statute). In this case, one might easily question whether anyone was "deceived" by the post-dated checks. Credicheck or its assignor surely knew that the plaintiffs probably did not have sufficient funds to cover the post-dated checks on the dates they were originally given. Otherwise, why would the plaintiffs have borrowed on such expensive terms? These are matters that go to the merits of the state court judgments, however, and not to the jurisdictional issue.

September 9, 1999 for the total amount of $1,130, which included treble damages. There is no allegation in the second amended complaint that either judgment has been set aside.

Plaintiffs allege that Gonon violated the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, in several ways: in count I, by "seeking and collecting treble damages when treble damages are forbidden by Indiana law," and by suing in the name of Credicheck rather than the true corporate name of The Credit Bureau of Greater in Indianapolis, and in Count IV by "seeking to collect a void loan." The three legal premises of these claims are as follows. First, plaintiffs contend that Indiana law limits recovery on a consumer's bad check to very modest fees that do not include treble damages. See Ind.Code § 24–4.5–3–405 (limiting charges to those "authorized by this article"); Ind.Code § 24–4.5–3–202 (authorized charges). Second, plaintiffs contend that Gonon violated 15 U.S.C. § 1692e(14) by filing suit in the name of Credicheck Inc. rather than The Credit Bureau of Greater Indianapolis, Inc. Finally, plaintiffs allege that the underlying loans were void under Indiana law because they had effective interest rates greater than 72 percent per year, in violation of the Indiana loansharking statute, Ind.Code § 35–45–7–2.

On August 16, 2001, nearly two years after the judgments against plaintiffs became final, the Indiana Supreme Court agreed with plaintiffs' principal theory and held that the fees used in the payday loan industry should be counted toward the interest rate cap. *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind.2001). The consequence of that holding was that most pending payday loans in Indiana became void and unenforceable.

■ What sets this case apart, however, is that defendants had already obtained the final state court judgments against Bullock and Hudson based upon their payday loans. In *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), the Supreme Court refused to exempt from the FDCPA all activity in state court litigation to collect debts. However, when a party attempts to apply the FDCPA to activity in a state court that resulted in a facially valid state court judgment, the *Rooker–Feldman* doctrine may come into play so as to bar jurisdiction.

■ The *Rooker–Feldman* doctrine is "a principle of jurisdiction that precludes the lower federal courts from applying appellate review to state court decisions. An action in federal court that alleges an injury 'inextricably intertwined' with a state court decision, such that success in the federal court would require overturning the state court decision, is barred by the *Rooker–Feldman* doctrine." *Epps v. Creditnet, Inc.*, 320 F.3d 756, 760 (7th Cir. 2003); see generally *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

In *Epps*, the plaintiffs were consumers who had taken out similar payday loans and who alleged violations of the Indiana Uniform Consumer Credit Code (IUCCC). The Seventh Circuit held that plaintiffs' claims were barred by the *Rooker–Feldman* doctrine. The claims were based on a theory nearly identical to the plaintiffs' claims in this case. The plaintiffs in *Epps* argued that Indiana law did not authorize the treble damages that had been awarded in small claims court judgments stemming from their defaulted payday loans. The Seventh Circuit found that the claims in the federal case would require the federal court to find that the state court had erred in awarding judgment to the lender, so

that *Rooker–Feldman* barred jurisdiction. The same reasoning applies here.

First, plaintiffs' challenge to the award of treble damages in the state court action is indistinguishable from the claim in *Epps*. Plaintiffs' allegations of FDCPA violations based on the treble damage awards are based on the same theory of state law. The theory is "inextricably intertwined" with the merits of the state court judgments. This court could not find a violation of the FDCPA without finding, in substance, that the state court erred by issuing its judgments.

Second, plaintiffs' allegations based on the use of the "d/b/a" name for the plaintiff amount to claims that the state court entered judgment in favor of an incorrectly named plaintiff. Again, this court could not find a violation of the FDCPA without finding that the state court erred by issuing its judgments.

Third, plaintiffs' allegations that Gonon violated the FDCPA by seeking to collect a void loan amount to claims that the state court never should have ruled against these borrowers in the first place. And again, this court could not find a violation of the FDCPA without finding that the state court erred by issuing its judgments.

Plaintiffs might try to seek aid from footnote 5 of the *Epps* opinion:

> *Rooker–Feldman* was mentioned but not argued by Creditnet in the district court. The district court, in a footnote, found the doctrine inapplicable because "Plaintiffs' claims are predicated upon actions by Mr. Sheeks that occurred before the small claims court entered judgment." App. at 9 n. 1. While this may be true with respect to the FDCPA claim against Sheeks, the statement does not address the IUCCC claim against Creditnet before us in the present case.

320 F.3d at 759. The footnote's equivocal *dictum* about FDCPA claims does not help plaintiffs in this case. The nature of the FDCPA claims against defendant Sheeks is not clear from the *Epps* opinion, nor did the court decide or even address whether those claims were "inextricably intertwined" with the state court judgment. More important, as explained above, deciding plaintiffs' claims of FDCPA violations by Gonon in this case would require this court to decide whether the state court erred in issuing its judgments. That is exactly what the *Rooker–Feldman* doctrine prohibits.

■ In seeking to avoid *Rooker–Feldman*, plaintiffs argue in their brief that their claims were independent of the state court judgment. They state: "Gonon violated numerous provisions of the FDCPA by attempting to collect amounts from plaintiffs not legally due." Pl. Br. at 3–4. The problem is that plaintiffs' theory is that Gonon violated the federal law by seeking exactly what the state court awarded. In other words, the state court determined that the amounts sought were in fact legally due. The state court might have been right and it might have been wrong under Indiana law. But this court could not rule in plaintiffs' favor without holding that the state court erred. Again, that is what the *Rooker–Feldman* doctrine forbids. When the *Rooker–Feldman* doctrine applies, "the federal courts lack subject matter jurisdiction even if the state court judgment was erroneous or unconstitutional." *Long v. Shorebank Development Corp.*, 182 F.3d 548, 555 (7th Cir. 1999), quoting *Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998). In other words, plaintiffs cannot avoid *Rooker–Feldman* by framing their claims in terms of defendants' attempts to obtain exactly what the state court awarded to them.

Plaintiffs also rely on *Long v. Shorebank Development Corp.* in an attempt to show

that their FDCPA claims are independent of the state court judgment. In *Long,* a case that illustrates the complexity of the *Rooker–Feldman* doctrine, the plaintiff Long alleged that her landlord and its attorneys had violated the FDCPA and deprived her of property without due process of law by obtaining a state court order evicting her from her home based on a false claim for past rent. Long also alleged that when she arrived at the state court to contest the matter, the landlord's attorney persuaded her to sign a document that Long thought was an agreement to a two-week delay to work out a settlement. The document was actually a consent to entry of judgment of eviction. After Long signed the document and left, the landlord's attorney obtained the eviction order from the state court. 182 F.3d at 552.

The principal issue on appeal was whether Long's due process challenge to her eviction (with a claim for damages based on the severe consequences of her eviction) was barred by the *Rooker–Feldman* doctrine. The Seventh Circuit explained that she could not have suffered those losses but for the state court's eviction order, and she could not prevail without showing that the eviction order was invalid. 182 F.3d at 557. These factors would have led to a finding of lack of jurisdiction under *Rooker–Feldman,* the court said, but for one unusual feature of state law—a feature that is not present in this case. In *Long,* the Seventh Circuit concluded that Illinois law would not have allowed Long to raise her claims in the state court eviction case. Illinois law would have treated her claims of due process and FDCPA violations as not germane to the action for forcible entry and detainer. *Id.* at 559–60. Because Long did not have a reasonable opportunity to raise her claims in the state court, the *Rooker–Feldman* doctrine did not bar them.

This case is readily distinguishable. Plaintiffs' federal claims for relief are based upon theories of state law (at least one of which was later adopted by the Indiana Supreme Court) that were central to the merits of the state court judgments. Contrary to the facts in *Long,* there is no indication that a state court would have refused to consider these plaintiffs' theories if they had been presented. As a result, plaintiffs' federal claims are inextricably intertwined with the state court judgments, and the *Rooker–Feldman* doctrine applies.

Accordingly, defendant Gonon's motion to dismiss is hereby granted, and the claims against him are dismissed for lack of subject matter jurisdiction.

So ordered.