# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-1616

LINDA KILLINGSWORTH,

*Plaintiff-Appellant,*

v.

HSBC BANK NEVADA, N.A., formerly known
as Household Bank (SB), N.A., et al.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5729—**John W. Darrah**, *Judge.*

———————

No. 06-2178

ERIC SAWYER,

*Plaintiff-Appellant,*

v.

ENSURANCE INSURANCE SERVICES, INCORPORATED,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 750—**Milton I. Shadur**, *Judge.*

———————

ARGUED DECEMBER 7, 2006—DECIDED NOVEMBER 9, 2007

———————

Before BAUER, MANION, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. We have consolidated for purposes of disposition two cases that require us to determine whether an amendment to the Fair Credit Reporting Act ("FCRA") eliminating private rights of action has an impermissible retroactive effect when applied to FCRA claims that accrued prior to the amendment's effective date. Linda Killingsworth received a prescreened credit card offer from Household Bank, N.A., sometime prior to August 20, 2004. She claims the offer contained FCRA disclosures that were not clear and conspicuous. The plaintiff in the second suit, Eric Sawyer, applied for auto insurance with Ensurance Insurance Services, Inc. ("Ensurance") in October 2004. Ensurance obtained his credit report in connection with that application. Sawyer contends Ensurance violated the FCRA by charging him a higher rate based on negative information in his credit report without giving him notice of that adverse action, and also by using his initial credit information for subsequent renewals of his policy when corrected credit information would have qualified him for a lower rate.

Both plaintiffs filed class action lawsuits in the Northern District of Illinois. Both complaints were dismissed based on section 311 of the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), which amended the FCRA to eliminate enforcement of certain FCRA provisions by private civil suit. *See* 15 U.S.C. § 1681m(h)(8). Sawyer and Killingsworth argue that the amendment, effective December 1, 2004, impairs rights they possessed prior to the new statute's effective date and therefore has an impermissible retroactive effect if applied to them.

As to Killingsworth's claim, we agree and therefore reverse. In Sawyer's case, however, the retroactivity question cannot be decided at the pleading stage because the conduct alleged in his complaint straddles FACTA's

effective date. The allegations, if true, could establish that an FCRA violation occurred before FACTA's effective date, and this is enough to survive the motion to dismiss.

## I.  Background

On December 4, 2003, Congress enacted FACTA, which amended portions of the FCRA. FACTA's section 311 added subsection (h) to § 1681m of the FCRA. Paragraph (8) of that subsection provides:

> **(8) Enforcement**
>
> > **(A) No civil actions.** Sections 1681n and 1681*o* of this title [pertaining to private civil remedies] shall not apply to any failure by any person to comply with this section.
> >
> > **(B) Administrative enforcement.** This section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section.

15 U.S.C. § 1681m(h)(8). Congress authorized the Federal Trade Commission and the Board of Governors of the Federal Reserve System to set the effective dates of various FACTA provisions, including section 311. Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-59, 117 Stat. 1952, at Sec. 3. On February 11, 2004, the Board of Governors promulgated regulations setting an effective date of December 1, 2004, for § 1681m(h)(8). 12 C.F.R. § 222.1(c)(3)(xiii).

Sometime prior to August 20, 2004, Linda Killingsworth received a prescreened offer of credit from Household Bank. This offer was based on Killingsworth's credit report, though she never gave Household authorization to access that information. These mailings, sent to at least 200 Illinois residents, targeted people with poor credit or

who had recently obtained bankruptcy discharges. Enclosed with the offer was a pamphlet containing disclosures about credit terms and a statement of compliance with 15 U.S.C. § 1681m(d),[1] FCRA's notice provision.

In October 2005 Killingsworth filed a class action against Household Bank (now known as HSBC Bank Nevada), Household Credit Services, Inc., and HSBC North America Holdings, Inc. (collectively "Household"), claiming a violation of § 1681m(d).[2] Killingsworth alleged the statutorily required disclosures were "buried" in an insert and were neither clear nor conspicuous. Household answered and moved for judgment on the pleadings, arguing that § 1681m(h)(8), which eliminated private rights of action for § 1681m violations, applied to Killingsworth's claim and required dismissal of the suit. The district court granted the motion, holding that § 1681m(h)(8) applied to all cases filed after December 1, 2004 (the amendment's effective date), provided the noncomplying disclosure was received after December 4, 2003 (the amendment's date of enactment).

\* \* \* \* \*

Eric Sawyer applied for auto insurance with Ensurance in October 2004. As part of the application process, Ensurance pulled Sawyer's credit report and used information in that report to determine the cost of his policy. Sawyer's insurance took effect on December 20, 2004, and was renewed twice thereafter at six-month intervals.

---

[1] Section 1681m(d) sets forth the "[d]uties of users making written credit or insurance solicitations on the basis of information contained in consumer files."

[2] Killingsworth's complaint also alleged Household violated § 1681b by accessing the class's consumer reports without its consent and for an impermissible purpose. She abandoned this claim in the district court and has not raised it on appeal.

Sawyer filed a class action alleging Ensurance violated § 1681m(a) of the FCRA by offering him a less favorable rate based on negative information in his credit report without providing him with an adverse action notice. Sawyer also alleged that Ensurance failed to consider interim changes to his credit rating and instead relied on his initial credit score when subsequently renewing his policy. His corrected credit report, he alleged, showed an improved credit score and would have resulted in a more favorable insurance rate. The district court granted Ensurance's motion to dismiss, holding that FACTA eliminated private causes of action under § 1681m(a) and this amendment to the FCRA applied to Sawyer's claim.

## II. Analysis

In Sawyer's case, the district court dismissed the complaint pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure* for failure to state a claim. We review the court's dismissal order de novo, accepting the complaint's well-pleaded allegations as true and drawing all favorable inferences for the plaintiff. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). Rule 8(a) of the *Federal Rules of Civil Procedure* requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This "short and plain statement" must be enough " 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In *Bell Atlantic*, the Supreme Court retooled federal pleading standards, retiring the oft-quoted *Conley* formulation that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley*, 355 U.S. at 45-46; *see Bell Atlantic*, 127 S. Ct. at 1969 (*Conley*'s "famous observation has earned its retirement.").

The Court explained in *Bell Atlantic* that the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 127 S. Ct. at 1964-65. Instead, the Court held, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965; *see also EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007); *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663 (7th Cir. 2007). Although this does "not require heightened fact pleading of specifics," it does require the complaint to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S. Ct. at 1974; *see also St. John's United Church of Christ v. City of Chicago*, 2007 WL 2669403 at *7 (7th Cir. Sept. 13, 2007). In *Airborne Beepers* we read *Twombly* together with the Supreme Court's decision two weeks later in *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007), and observed that "we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers*, 499 F.3d at 667.

Here, Ensurance primarily raises a legal argument—that the FACTA amendment to the FCRA eliminated Sawyer's right to bring a private civil action—but it also challenges the complaint's factual sufficiency.

In Killingsworth's case, the district court entered judgment on the pleadings pursuant to Rule 12(c) of the *Federal Rules of Civil Procedure*. Like Rule 12(b)(6) dismissals, we review judgments on the pleadings de novo.

*Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). Household argued, as did Ensurance, that the repeal of private rights of action for § 1681m violations meant that Killingsworth had no statutory cause of action, essentially a Rule 12(b)(6) argument. If a defendant raises a Rule 12(b) defense in a Rule 12(c) motion, a Rule 12(b)(6)-type analysis applies. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). Household argued in the alternative that its disclosures were clear and conspicuous as required by the FCRA, an argument that also warrants Rule 12(b)(6)-type analysis. *See id.*

A threshold issue in both appeals is whether FACTA eliminated private causes of action for the particular violations of § 1681(m) asserted by the plaintiffs. Killingsworth claims Household violated § 1681m(d); Sawyer claims Ensurance violated § 1681m(a). In *Perry v. First National Bank*, we addressed the question "whether the newly added § 1681m(h)(8) was designed to preclude private enforcement of the entirety of § 1681m, or just § 1681m(h)," holding that "[t]he unambiguous language of § 1681m(h)(8) demonstrates that Congress intended to preempt private causes of action to enforce § 1681m." 459 F.3d 816, 819, 823 (7th Cir. 2006). Section 1681m(h)(8) thus eliminates both plaintiffs' claims—*if* it applies. This brings us directly to the question of the statute's retroactivity, as the conduct alleged in each complaint (or in Sawyer's case, at least some of it) predates the statute's effective date.[3]

---

[3] *Murray v. GMAC Mortgage Corp.* briefly touched on the question of the retroactivity of § 1681m(h)(8), noting that "[a] recent amendment to [the FCRA] abolishes private remedies for violations of the clear-disclosure requirement, which in the future will be enforced administratively, but that change does not apply to offers made before its effective date . . . ." 434 F.3d

(continued...)

In *Landgraf v. USI Film Products*, the Supreme Court explained the "antiretroactivity principle"—the principle that the "legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." 511 U.S. 244, 265 (1994) (quotation omitted). The Court observed that this principle is in tension with another: the rule that "a court is to apply the law in effect at the time it renders its decision." *Id.* at 264 (quoting *Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 (1974)). *Landgraf* reconciled the conflict by establishing a presumption of antiretroactivity, but the presumption is applicable only where there is ambiguity about a statute's temporal reach:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280; *see also Labojewski v. Gonzales*, 407 F.3d 814, 819 (7th Cir 2005).

---

[3]  (...continued)
948, 951 (7th Cir. 2006). In *Perry*, we characterized this as dicta, as the retroactivity question was not at issue in *Murray*. *Perry v. First Nat'l Bank*, 459 F.3d 816, 819 n.1 (7th Cir. 2006).

*Landgraf'*s requirement of clear congressional intent "assures that Congress itself has affirmatively considered the potential unfairness of retroactive application" and "allocates to Congress responsibility for fundamental policy judgments concerning the proper temporal reach of statutes." *Landgraf*, 511 U.S. at 272-73. When it is not clear whether a statute is meant to apply retrospectively, "prospectivity remains the appropriate default rule." *Id.* at 272; *see also Labojewski*, 407 F.3d at 819. "Where Congress has not made a clear policy judgment about retroactivity, applying the presumption against retroactive legislation 'accords with widely held intuitions about how statutes ordinarily operate' and 'generally coincide[s] with legislative and public expectations.' " *Labojewski*, 407 F.3d at 819 (quoting *Landgraf*, 511 U.S. at 272).

Household and Ensurance argue that Congress specified FACTA's reach, although by negative implication. *See, e.g.*, *Lindh v. Murphy*, 521 U.S. 320 (1997); *cf. Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006). They point to section 312(f) of FACTA, codified as a note to 15 U.S.C. § 1681n, which states that "[n]othing in . . . any . . . provision of this Act shall be construed to affect any liability under § 616 or § 617 of the Fair Credit Reporting Act [15 U.S.C. §§ 1681n, 1681*o*] that existed on the day before the date of enactment of this Act." They contend that Congress's intent *not* to affect liability that existed on or before FACTA's *enactment* date means that Congress intended liability to be extinguished after that date—including liability arising between the statute's date of *enactment* and its *effective* date. That is, private claims arising before the statute was enacted are preserved, but private claims arising after the statute's enactment date but before its effective date are not. We think this line of reasoning reads too much into too little.

In *Lindh v. Murphy*, the Supreme Court addressed the question of whether amendments in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to chapter 153 of Title 28 of the *United States Code* governing federal habeas corpus proceedings applied to cases pending when AEDPA was enacted or only to cases filed after its enactment date. The Court noted that AEDPA amended the habeas procedures in chapter 153 of Title 28 and also created an entirely new chapter 154 of Title 28 to govern habeas proceedings in certain state capital cases. The Court found it significant that AEDPA's creation of chapter 154 was expressly made applicable to all cases pending on or after the date of enactment, while the amendments to chapter 153 were not. *Lindh*, 521 U.S. at 327. The Court read AEDPA's express retrospective application of chapter 154 "as indicating implicitly that the amendments to chapter 153 were assumed and meant to apply to the general run of habeas cases only when those cases had been filed after the date of the Act." *Id.* By relying on this negative implication—a principle of statutory interpretation—the Court did not reach *Landgraf's* second step. The Court held that Congress intended AEDPA's amendments to chapter 153 to apply prospectively only. *Id.* at 336-37.

The Third Circuit has characterized *Lindh* as establishing an intermediate step in the *Landgraf* framework, requiring courts "to examine a statute under normal rules of statutory construction for evidence of congressional intent to apply the statute prospectively only." *Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156, 162 (3d Cir. 1998). While *Landgraf* reaffirmed the "traditional rule requiring retroactive application to be supported by a clear statement" from Congress, *Lindh* established that general rules of statutory interpretation apply to determine whether Congress has clearly spoken *either way*—as

to prospective *or* retrospective application. *Lindh*, 521 U.S. at 326; *Mathews*, 161 F.3d at 160-62.

In *Hamdan* the Court relied on the *Lindh* principle that "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute," *see Hamdan*, 126 S. Ct. at 2765, and found prospective intent by implication. Section 1005(e)(1) of the Detainee Treatment Act of 2005 ("DTA") stripped courts of jurisdiction to hear habeas corpus petitions from detainees at Guantanamo Bay, Cuba. Another part of the DTA specified that § 1005(e)(2) and (3)—also jurisdiction-modifying provisions—applied to all claims pending on or after the date of the Act's enactment. The Court held that the omission of § 1005(e)(1) from the provision making § 1005(e)(2) and (3) retrospective meant that § 1005(e)(1) was intended to apply prospectively only. *Id.* at 2766.

Here, in contrast, FACTA's section 312(f) preserves private causes of action for liability that accrued prior to FACTA's date of enactment, but because FACTA's *enactment* and *effective* dates are different, the negative implication argument loses its logic. Drawing a negative inference from FACTA's section 312(f) fails to distinguish between FACTA's enactment and effective dates or account for claims arising between the two dates. If applied here, the negative implication argument simply conflates FACTA's enactment and effective dates; if all claims accruing after the date of enactment are extinguished without regard to the effective date, the latter date has no meaning. We think this stretches the *Lindh/Hamdan* adaptation of *Landgraf* too far.

We conclude Congress has not clearly spoken to the question of whether § 1681m(h)(8) applies to FCRA claims that arose *between* FACTA's enactment and effective dates, and thus move on to the second inquiry of the

*Landgraf* analysis. This requires us to determine whether the elimination of private rights of action would have an impermissible retroactive effect if applied to the events in these suits. More specifically, we ask whether the application of the FACTA amendment eliminating private rights of action would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf,* 511 U.S. at 280. If the statute would have any of these effects if applied here, the "traditional presumption" of prospectivity applies. *Id.*

Killingsworth's cause of action accrued between FACTA's enactment and effective dates. While a plaintiff's sustaining an injury is usually a necessary part of a claim's accrual, *see TRW Inc. v. Andrews,* 534 U.S. 19, 30 (2001); *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006); *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990), the FCRA contemplates possible awards of statutory damages where the violation is willful, *see* 15 U.S.C. § 1681n(a)(1)(A), an allegation found both in Killingsworth's and Sawyer's complaints. *See Safeco Ins. Co. of Am. v. Burr,* 127 S. Ct. 2201, 2210 (2007). Thus, actual damages are not necessarily a precondition for suit; Killingsworth's cause of action arose from Household's alleged willful failure to comply with § 1681m and that is when the right to statutory damages arose. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (explaining that statutory damages allow for the recovery of modest damages, that likely are small and difficult to quantify, without proof of injury).

Accordingly, prior to FACTA's effective date, Killingsworth had a right of private civil action for damages, a right that would be impaired if FACTA's repeal of

private rights of action were applied retrospectively. Section 1681m(h)(8) not only eliminates civil actions, but also the damages recoverable under § 1681n, including statutory, actual, and punitive damages for willful failure to comply with § 1681m. The current § 1681m(h)(8) specifies that § 1681m shall be enforced exclusively under § 1681s, the administrative enforcement provision of the FCRA.

The Third Circuit's decision in *Mathews* supports our conclusion, although it addressed retroactivity in the context of a different statutory scheme. *Mathews* held that a provision of the Private Securities Litigation Reform Act ("PSLRA") eliminating private causes of action for racketeering claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") based on predicate acts of securities fraud should apply prospectively only. 161 F.3d at 165. The court concluded that applying the PSLRA's amendment of RICO retrospectively would impair the plaintiff's substantive rights and alter the legal consequences that attached to the events in suit. The court explained:

> In this case, the events in question are the alleged fraudulent acts by the defendants. If the RICO Amendment is applied to this case, it would attach new legal consequences to these events. Before the Amendment, the legal consequences included liability under the federal securities laws and RICO; after the Amendment, the legal consequences included liability only under the securities laws.

*Id.* at 164. The court also analogized to the circumstances in *Landgraf,* which concerned an amendment to Title VII making compensatory and punitive damages available in employment discrimination actions, whereas only back pay had been previously allowed. The court observed that "[i]f a change in the law from back pay to compensatory

and punitive damages is seen as *creating* a new cause of action and impairing a party's rights, certainly a change from treble damages (under RICO) to compensatory damages alone (under the securities laws) may be seen as *destroying* a cause of action and impairing a party's rights." *Id.* at 165.

We find the logic of *Mathews* persuasive here. Killingsworth alleges that Household's FCRA violation occurred prior to August 20, 2004, before the December 1, 2004 effective date of § 1681m(h)(8), when she had a right to a private cause of action for damages under the statute. That preexisting substantive right would be impaired if FACTA's amendment eliminating private rights of action were applied retrospectively. The amendment therefore has an impermissible retroactive effect on claims like Killingsworth's that accrued prior to its December 1, 2004 effective date.

In Sawyer's case, however, the issue of retroactivity may ultimately be irrelevant. His complaint is not precise about when the FCRA violation occurred, and discovery may show that it occurred after December 1, 2004, when FACTA became effective. At the pleading stage, however, we cannot say Sawyer's complaint is wholly insufficient; he alleges that he applied for insurance in October 2004, before FACTA's effective date, and his insurance took effect on December 20, 2004, after FACTA became effective. He claims Ensurance violated the FCRA by not giving him an adverse action notice in connection with the use of his credit information prior to issuing the policy and also by failing to use more favorable credit information when the policy renewed.

The renewals, according to the complaint, occurred at six-month intervals after the original policy was issued. This conduct occurred after FACTA's effective date and therefore is not actionable. To the extent that Sawyer's

FCRA claim is based on Ensurance's conduct leading up to the initial issuance of the policy, it may or may not be barred. *See Safeco*, 127 S. Ct. at 2211-12 (higher initial rate may be an "increase" for purposes of adverse action notice if it is based on credit report). As we have noted, the allegations surrounding this event straddle FACTA's December 1, 2004 effective date. Accepting the allegations as true, the FCRA violation could have occurred before FACTA's effective date; discovery may or may not bear this out.

Ensurance also argues that Sawyer has not sufficiently pleaded a willful violation of the FCRA. But the cases Ensurance cites in support of this argument are summary judgment cases. *See Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) ("To act willfully, a defendant must knowingly and intentionally violate the [applicable provision] and it 'must also be conscious that [its] act impinges on the rights of others.' " (quoting *Philips v. Grendahl*, 312 F.3d 357, 368 (8th Cir. 2002))). Sawyer might (or might not) be able to defeat a summary judgment motion on the element of willfulness (assuming this claim goes forward), but his complaint contains sufficient detail to survive a motion to dismiss. He alleges that Ensurance failed to give him an adverse action notice based on negative information in his credit report. He alleges he removed the negative information from his report sometime between October 2004 and December 2005 and would have qualified for a more favorable rate, but Ensurance nevertheless intentionally and willfully charged him an increased rate based on the negative credit information. This is enough factual detail to state a claim for a willful violation of the FCRA.

For its part, Household also challenges the sufficiency of Killingsworth's complaint, specifically its allegation that the § 1681m(d) disclosures were not clear and conspic-

uous. But the pleadings contain discrepancies that make it impossible to resolve this question at this stage of the case. Killingsworth attached a copy of the purportedly offending disclosures as an exhibit to her complaint. Household attached a different document as an exhibit to its motion for judgment on the pleadings, explaining that the exhibit presents the disclosures "in a more readable format than [that] . . . reproduced with the Complaint." Which version is "more readable" begs the ultimate question here; the claimed FCRA violation is based on allegations that Household's actual disclosures were not clear and conspicuous. Household's version includes both aesthetic and substantive differences from the disclosure form attached to the complaint. This is not an issue capable of resolution on the pleadings, or at least not on *these* pleadings.

Finally, Household—like Ensurance—argues that Killingsworth has not sufficiently pleaded a willful violation of the FCRA. For similar reasons, we reject the argument. Killingsworth alleges that Household "preselected" and targeted her (among others) for its credit solicitation and accessed her credit information without her knowledge or permission for that purpose. She alleges that Household developed and approved the text and format of the solicitation, including numerous specific disclosures of credit terms and conditions that were neither clear nor conspicuous, and that it did all this willfully. This is enough factual detail to state a claim for a willful violation of the FCRA.

For the foregoing reasons, we conclude that FACTA's elimination of private rights of action for § 1681m violations has an impermissibly retroactive effect when applied to claims that accrued before its December 1, 2004 effective date. Killingsworth's claim may proceed; we reverse the judgment on the pleadings in her case and remand for proceedings consistent with this opinion.

Sawyer's claim may proceed for now; some of the allegations in his complaint, if true, could establish that an FCRA violation occurred before FACTA's effective date. We reverse the judgment dismissing his case and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*