**Patrick MORAN, Plaintiff,**

v.

**GREENE & COOPER ATTORNEYS LLP, Defendant.**

No. 1:13–cv–01594–SEB–DML.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Signed Sept. 4, 2014.

Michael Anthony Eades, John Thomas Steinkamp, John T. Steinkamp and Associates, Indianapolis, IN, for Plaintiff.

Charlie William Gordon, Greene & Cooper PSC, Louisville, KY, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

SARAH EVANS BARKER, District Judge.

This cause is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim [Docket No. 9], filed on November 21, 2013 pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is DENIED.

### Factual Background

We read the limited facts available to us at this stage in a light most favorable to Plaintiff as the non-moving party. Plaintiff Patrick Moran is an Indiana citizen residing in the Southern District of Indiana. Compl. ¶ 8. Defendant Greene & Cooper Attorneys, LLP ("Greene & Cooper") acts on behalf of a collection agency or debt purchaser, and this suit arises out of Defendant's attempt to collect a debt Plaintiff owed to a third party.

Moran was sued by Asset Acceptance, LLC in Marion County Superior Court, cause number 49D12–1211–CC–043219, on November 7, 2012.[1] Def.'s Br. 1; *see also* Pl.'s Ex. 3.[2] Asset Acceptance, LLC was represented by Greene & Cooper in that matter. *See* Def.'s Ex. 1. Default was entered against Moran on January 2, 2013, and the Marion Superior Court entered a judgment against Moran in the amount of $7,213.57. Pl.'s Ex. 3; Compl. ¶ 27.

---

1. A search of the public Marion Superior Court records does not reveal a case name matching this cause number, but neither party disputes the existence of the Marion County case. Its nature is not relevant to this case.

2. The cause number is blacked out in the version of the dunning letter from Defendant that Plaintiff has attached to her Complaint, but Defendant's brief does describe the cause number, if no other details about the underlying suit reduced to judgment.

Moran's claim here stems from a communication that Defendant sent him in an attempt to collect the debt associated with this state court judgment—a letter dated February 14, 2013. The letter, which Moran has attached to his complaint, contains the following heading:

RE: Account of Patrick Moran

with Unknown

CASE #: 49D12–1211–CC–043219 [3]

Pl.'s Ex. 3.[4] The body of the letter states as follows:

Dear Mr. Moran:

I am employed by the law firm named on this letterhead. As you are aware, our firm has been retained by Unknown to collect the above referenced account.

Judgment was entered against you on January 2, 2013, for the sum of $7,213.57, plus Interest which is continuing to accrue. As of the date of this letter, the current balance of your account is $7,446.56.

In order to resolve this matter, you must contact our office immediately to make arrangements on this account. Contact our office today to do a check by phone or discuss additional payment methods.

We will have no choice but to proceed with additional steps to collect this judgment if arrangements are not made. Interest is accruing on this account and the balance will continue to increase unless you pay your account today.

*Id.* The letter closes with disclosures regarding Moran's right to request the cessation of communication and his ability to contact the Federal Trade Commission regarding the Fair Debt Collection Practices Act. *Id.* Plaintiff brought this suit alleging a violation of the FDCPA on October 4, 2013. Docket No. 1.

### *Legal Analysis*

### Standard of Review

The Federal Rules of Civil Procedure authorize dismissal of claims for "failure to state a claim upon which relief may be granted." Fed.R.Civ.P. 12(b)(6). In determining the sufficiency of a claim, the court considers all allegations in the complaint to be true and draws such reasonable inferences as required in the plaintiff's favor. *Jacobs v. City of Chi.*, 215 F.3d 758, 765 (7th Cir.2000). Federal Rule of Civil Procedure 8(a) applies, with several enumerated exceptions, to all civil claims, and it establishes a liberal pleading regime in which a plaintiff must provide only a "short and plain statement of the claim showing that [he] is entitled to relief," Fed. R. Civ. Pro. 8(a)(2); this reflects the modern policy judgment that claims should be "determined on their merits rather than through missteps in pleading." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir.2007) (citing 2 James W. Moore, et al., *Moore's Federal Practice* § 8.04 (3d ed.2006)). A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir.2008).

In its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the United States Supreme

---

**3.** The cause number is mostly blacked out in the version attached by Plaintiff.

**4.** Plaintiff has attached the letter to the Complaint as Exhibit 3. We may consider this document, as well as the others attached by Plaintiff as part of the pleadings, in ruling on Defendant's motion. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir.2002).

Court introduced a more stringent formulation of the pleading requirements under Rule 8. In addition to providing fair notice to a defendant, the Court clarified that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). Plausibility requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir.2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The plausibility of a complaint depends upon the context in which the allegations are situated, and turns on more than the pleadings' level of factual specificity; the same factually sparse pleading could be fantastic and unrealistic in one setting and entirely plausible in another. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F.Supp.2d 363, 370 (M.D.Pa.2008).

Although *Twombly* and *Iqbal* represent a new gloss on the standards governing the sufficiency of pleadings, they do not overturn the fundamental principle of liberality embodied in Rule 8. As this Court has noted, "notice pleading is still all that is required, and 'a plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *United States v. City of Evansville*, 2011 WL 52467, at *1 (S.D.Ind. Jan. 8, 2011) (quoting *Tamayo*, 526 F.3d at 1083). On a mo-

tion to dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.1994).

## Discussion

Defendant advances two arguments for dismissal: one based on the Supreme Court's *Rooker–Feldman* justiciability doctrine and the other on the Complaint's failure to state a plausible claim that Defendant violated the FDCPA. Because the *Rooker–Feldman* doctrine raises the issue of the Court's subject matter jurisdiction over the case, we address it first, before considering the merits of the Complaint.

## I. The *Rooker–Feldman* Doctrine

The *Rooker–Feldman* doctrine, named after the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*[5] and *District of Columbia Court of Appeals v. Feldman*,[6] provides that the federal district courts must decline to entertain "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lance v. Dennis*, 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006); *Kelley v. Med–1 Solutions LLC*, 548 F.3d 600, 603 (7th Cir.2008). The doctrine stems from the Supreme Court's exclusive jurisdiction over appeals from state high-court judgments, *see* 28 U.S.C. § 1257; it thus requires district courts to steer away from cases in which a plaintiff's claimed injury directly results from, or is "inextricably intertwined" with, a state court judgment. *See Garry v. Geils*, 82

---

**5.** 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

**6.** 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

F.3d 1362, 1365–1366 (7th Cir.1996). Even if it feels that the state court's decision was clearly misguided or unconstitutional, a district court must decline to exercise jurisdiction in a case where it is unable to "rule in [the] plaintiffs' favor without holding that the state court erred." *Bullock v. Credit Bureau of Greater Indianapolis, Inc.,* 272 F.Supp.2d 780, 783 (S.D.Ind. 2003).

Contending that Plaintiff's "FDCPA claims ... require[] the Court to review and reject the state court judgment" entered against him, Defendant urges that we lack subject matter jurisdiction. It relies in large part on a previous decision of this Court, *Bullock v. Credit Bureau of Greater Indianapolis, Inc.,* 272 F.Supp.2d 780 (S.D.Ind.2003), in which we held that *Rooker–Feldman* doctrine applied to bar an FDCPA complaint. Examination of the facts of *Bullock,* however, demonstrates Defendant's misunderstanding of the decision and its supporting precedent. In *Bullock,* the plaintiffs alleged that the defendant debt-collectors had violated the act *in obtaining* the state court judgment on a debt—namely, by seeking treble damages and suing under a false name. 272 F.Supp.2d at 782. By challenging the debt-collector's practices, the plaintiffs there were unavoidably asking the district court to rule the state judgment invalid, bringing their claim squarely within *Rooker–Feldman. Id.* at 783; *see also Epps v. Creditnet, Inc.,* 320 F.3d 756, 760 (7th Cir. 2003) (declining jurisdiction over a claim that treble damages in state judgment violated Indiana law).

■ Here, by contrast, Plaintiff does not challenge the validity of the state court judgment against him—neither its amount nor the methods used by the creditor to obtain it. Rather, he argues that the dunning letter Defendant sent him following the adjudication by the state court in an attempt to *collect* the amount due violated the FDCPA; in essence, as we shall discuss further below, he argues the letter was confusing and misleading in its failure to disclose the identity of the creditor and its failure to explain the provenance of the total amount due in relation to the original judgment amount. Given these claims, we could find that Defendant violated the statute without "reviewing" the state court judgment, and *Rooker–Feldman* doctrine therefore presents no impediment to our exercise of jurisdiction. *See Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 555 (7th Cir.1999) (FDCPA suit not barred by *Rooker–Feldman* where challenged conduct is "independent" of the state court judgment rather than an attempt to set it aside); *Gillard v. Michalakos,* 365 Fed. Appx. 1, 3 (7th Cir.2010) (affirming the denial of a particular FDCPA claim but · recognizing generally that lawyers' attempts to collect on judgments can violate the statute). The *Rooker–Feldman* defense is, thus, unavailing.

## II. Sufficiency of Plaintiff's FDCPA claim

Plaintiff adequately states the foundational prerequisites for an FDCPA claim in his Complaint: he is a natural person and a "consumer," Compl. ¶¶ 10–11; his debt arose out of a transaction entered into "primarily for personal, family, or household purposes," *id.* at ¶ 18; and Greene & Cooper was a "debt collection agency." *Id.* at ¶ 13. Defendant disputes none of these assertions, but rather challenges only whether its conduct violated the provisions of the FDCPA. *See* Def.'s Br. 3–7.

### A. Legal standard under the FDCPA

■ The Fair Debt Collection Practices Act (FDCPA) aims at remedying the use of "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a).

"Most relevant to this case, the statute forbids debt collectors from making "false or misleading representations," including the false representation of ... the character, amount, or legal status of any debt." 15 U.S.C. § 1692e. In determining whether the contents of a debt collector's communication with a debtor are "false or misleading," the Seventh Circuit has directed that we are to view them from the point of view of an "unsophisticated consumer"—one who is "uninformed, naive, or trusting," albeit not a "dimwit." *Wahl v. Midland Credit Mgmt. Inc.*, 556 F.3d 643 (7th Cir.2009) ("The 'unsophisticated consumer' isn't a dimwit. She may be 'uninformed, naive, [and] trusting,' but she has 'rudimentary knowledge about the financial world.'") (further citations omitted). A plaintiff cannot make out a violation of the statute, however, simply by pointing to some formal, but immaterial mistake in the debt collector's form of communication. "A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (7th Cir.2009) (citing *Wahl*, 556 F.3d at 646).

How a particular notice affects its intended audience "is a question of fact," and thus the question is often not amenable to disposition on a motion to dismiss. *See Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir.1999); *Headen v. Asset Acceptance, LLC*, 383 F.Supp.2d 1097, 1102 (S.D.Ind.2005). Where the text of a dunning letter is not unambiguously "confusing" on its face, a plaintiff will need to proffer additional evidence supplementing his own say-so—such as survey data—in order to survive summary judgment on his FDCPA claim. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir.2005). At the pleading stage, however, a claim should survive so long as the plaintiff plausibly alleges a violation and the plaintiff is not precluded from recovery as a matter of law. *Cf. Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 484 (7th Cir.1997) (affirming dismissal where the challenged communication used only language explicitly permitted under the statute).

## B. The contents of Greene & Cooper's February 14, 2013 letter

Plaintiff alleges that the dunning letter Greene & Cooper sent him on February 14, 2013 ran afoul of the statute in two ways: it did not divulge the identity of the creditor, and it misleadingly implied that interest on the state court judgment was accruing at a greater rate than it really was. Pl.'s Resp. 10. We conclude that Plaintiff has plausibly alleged that the letter was confusing or misleading to an unsophisticated consumer in both respects.

### 1. Identity of the creditor

Both the heading and the body of the letter state that Greene & Cooper is attempting to collect the judgment amount on behalf of "Unknown." Pl.'s Ex. 3. It seems to us clear that failing to name the creditor entirely-like falsely identifying the creditor-is liable to lead to the kind of patent confusion forbidden by the statute. *See, e.g., Bode v. Encore Receivable Mgmt., Inc.*, 2007 WL 2493898, at *4 (E.D.Wis. Aug. 30, 2007) ("Accordingly, the failure to name the correct creditor could create liability ....") (citing *Durkin*, 406 F.3d at 415; *Scheunemann v. J.C. Christensen & Assocs., Inc.*, 802 F.Supp.2d 981, 984–985 (E.D.Wis.2011) (denying summary judgment where dunning letter named creditor incorrectly). In arguing that failure to specify a creditor can violate the statute, Plaintiff relies in particular on the Northern District of Indiana's decision in *Smith v. American Revenue Corp.*, 2005

WL 1162906 (N.D.Ind.2005). There, in scrutinizing a letter seeking payment of a debt owed to what the letter described mysteriously as "various accounts," the court stated that "the letter [is] patently confusing on its face in that, after a thorough and careful reading, this Court is unable to determine either the identity of the creditors or the amount owed to the specific creditors." 2005 WL 1162906, at *5 (N.D.Ind. May 16, 2005). None of the cases cited by Plaintiff is binding upon us, but we agree with *Smith's* reasoning. Unsophisticated consumers may lose track of their debts, *see Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004), and it is plausible that Plaintiff here would reasonably be confused by a letter demanding that he pay a sum of money to "Unknown."

Defendant objects that the letter listed the creditor as "Unknown" because of an "electronic merging error," and was not meant to "harass, oppress, or abuse." Def.'s Br. 5. A "bona fide error" affirmative defense to FDCPA liability exists, but Defendant has not asserted one, nor has it set forth the elements necessary to prevail on such a defense. *See* 15 U.S.C. § 1692k(c) (defining the "bona fide error" exception); *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir.1997). Defendant's passing mention of a clerical error in its brief is insufficient to avail itself of the defense, at least at the pleadings stage.[7] Alternately, Defendant insists that the inclusion of the state court cause number in the letter "provided sufficient information for Moran to know whom [Defendant] represented and to whom the judgment was entered in favor of." Def.'s Br. 5. Given the difficulties that ostensibly sophisticated lawyers often have in attempting to navigate the world of cause numbers and electronic dockets, we decline to accept the notion

that an unsophisticated consumer would necessarily have his bewilderment dispelled by recourse to a 17-digit jumble of numerals and letters. The Seventh Circuit has rejected the "the proposition that a debt collector could provide incomplete information in a dunning letter so long as it provided a telephone number for the debtor to call." *Fields*, 383 F.3d at 566. Like a telephone number, the state court cause number here may serve as a means to eventual enlightenment, but it does not provide clarity on its face.

### 2. Nature of the interest on the judgment

 The FDCPA requires that communications to debtors not deceive them as to the "character" or "amount" of any debt due. "It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it." *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004) (citing *Bartlett v. Heibl*, 128 F.3d 497, 500–01 (7th Cir.1997)) (additional citations omitted). A debt collector need not "itemize" the debt, so long as its statement of the total is clear and accurate. *See Hahn*, 557 F.3d at 756–757 ("[A] debt collector need not break out principal and interest; it is enough to tell the debtor the bottom line.... A dollar due is a dollar due."). However, a dunning letter may violate the FDCPA if its failure to clearly distinguish principal and interest can mislead the debtor into misunderstanding the size of the principal or the rate of interest. In *Fields*, the Seventh Circuit held that a letter seeking nearly $400 was misleading when the original debt had been only $122 and the letter never explained that the difference between the original and cur-

7. Defendant has not filed an Answer to the Complaint.

rent amounts was caused by attorneys' fees. *Fields*, 383 F.3d at 566. As the court explained:

> [A]n unsophisticated consumer may have lost the bill and forgotten the amount of the debt completely. In this circumstance, the debtor (or the debtor's spouse, or someone else paying bills for the debtor) might logically assume that she simply incurred nearly $400 in charges. By leaving the door open for this assumption to be made, Wilber's letter *was misleading because it gave a false impression of the character of the debt.* It is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt.

*Id.* (emphasis added). *Cf. Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 598–599 (7th Cir.2004) (distinguishing Fields and finding no FDCPA violation where debt collector itemized the attorneys' fees owed).

Here, Greene & Cooper's letter may have left the reader open to a similar threat of misapprehension. The letter stated that "[j]udgment was entered against you on January 2, 2013, for the sum of $7,213.57, plus Interest which is continuing to accrue. As of the date of this letter, the current balance of your account is $7,446.56." Pl.'s Ex. 3. Since it mentions only the principal and the interest which is "continuing to accrue," a reasonable reader could conclude from the letter that $233.99 in interest had accumulated in the short time since the state court judgment was entered—an alarming impression, and one driven home by the letter's exhortation that the "balance will continue to increase unless you pay your account today." *See* Pl.'s Ex. 3; Pl.'s Resp. 13. In fact, as both parties agree, a much smaller amount of interest[8] had accrued at the time of the letter. *See* Pl.'s Resp. 2. Most of the increase, $165 in fact, was accounted for by court costs.[9]

■ Plaintiff's principal contention is not that he does not owe the $7,446.56 quoted to him in Greene & Cooper's letter—nor could it be without running afoul of *Rooker–Feldman* abstention.[10] Instead, he argues that Defendant presented the sum in a misleading manner, one that might reasonably have given him a considerably direr picture of his debts than warranted by reality.[11] Some degree of "puffery" is tolerated in dunning letters. *See Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir.2012). Even an unsophisticated consumer can

---

**8.** Plaintiff, extrapolating from the statutory 8% postjudgment rate, calculates the number at $72.14. Defendant calculates it as $67.98.

**9.** According to Defendant, this amount was comprised of $139 in filing fees and a $26 "service fee." Def.'s Br. 6.

**10.** The Complaint does recite that "Plaintiff disputes the debt," Compl. ¶ 21, and it alleges that Defendant was "attempting to collect an amount not authorized." Compl. ¶ 30. To the extent these statements challenge the underlying validity of the debt, we cannot entertain them. In his "Claim for Relief," however, Plaintiff makes clear that his core allegation is that Defendant violated § 1692d, § 1692e, and § 1692f by misrepresenting the identity of the creditor and the nature of the sum. As we have stated above, we conclude that these accusations fit best under the rubric of § 1692e, and we have analyzed the claim accordingly.

**11.** Defendant notes that "[j]udgments include costs." Def.'s Br. 6. True though it may be, this statement fails to take into account the perspective of the unsophisticated consumer. It is, at the very least, a stretch to argue that the typical recipient of such a letter would divine, without any other guidance, that a fairly large fixed sum of $165 in court costs accounted for a significant portion of the discrepancy between the principal and the running balance.

usually discount a letter's insistence that he "call today" or "act now!" But where routine puffery is paired with incomplete and potentially misleading information impairing the consumer's ability "to knowledgeably assess the validity of the debt," such a letter could produce legitimate distress. *See Fields,* 383 F.3d at 566.

### Conclusion

It is not for us to say, in acting on Defendant's motion to dismiss, whether Greene & Cooper's letter truly was misleading or confusing as a matter of fact. It is sufficient at this stage that Plaintiff has stated his allegations plausibly. Because we have concluded that he has, Defendant's motion to dismiss for failure to state a claim is DENIED.

IT IS SO ORDERED.