In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1517

BARBRA WAHL, on behalf of herself
and certain classes,

*Plaintiff-Appellant,*

*v.*

MIDLAND CREDIT MANAGEMENT, INC.,
MIDLAND FUNDING NCC-2 CORP.,
and ENCORE CAPITAL GROUP INC., formerly
known as MCM Capital Group, Inc.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 1708—**Ruben Castillo**, *Judge.*

ARGUED JANUARY 23, 2009—DECIDED FEBRUARY 23, 2009

Before BAUER, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* Congress passed the Fair Debt
Collection Practices Act (FDCPA), 15 U.S.C. § 1692, to
curb abusive methods of debt collection. Central to this
objective is the Act's requirement that debt collectors

state only truthful information. Today we decide whether this requirement is violated when a collector, although accurately stating the amount demanded, breaks down the principal and interest components of the debt in an arguably false manner.

The facts are largely undisputed. During the 1980s and 1990s, Barbra Wahl racked up a small debt on a credit card issued by BP Amoco (BP). As of 1998, the outstanding balance was a mere $66.98, and Wahl was no longer using the card. Unfortunately, though, Wahl was out of work at the time due to a stroke she suffered three years earlier, which also left her with exorbitant medical expenses, so the bill went unpaid. And with interest and late fees accruing every month, it soon spiraled out of control. By 2002, the bill was nearly $1000. Statements from 2002 to 2005 showed that, although the card was not being used, nearly $40 in interest and late fees were accruing every month. In 2005, the debt finally went into collection, and that's where the defendants in this case—Midland Credit Managing, Inc., Midland Funding NCC-2 Corp., and Encore Capital Group, Inc. (collectively[1] Midland)—became involved. Midland took title to the debt in January, purchasing the balance of $1149.09. Of course, the balance was comprised almost entirely of interest and late fees charged by BP, but that was a valid part of the money owed.

In early February 2005, Midland sent Wahl a letter demanding payment. Midland listed the "current balance"

---

[1] No pun intended.

as $1,149.09 but offered Wahl a 25 percent discount if she payed within a month and a half (making the "amount due" only $861.82). Wahl didn't take the deal, but she has no beef with that letter. Instead, Wahl claims it was the next two letters that violated the FDCPA, because—ironically enough—they provided *more* information.

The next letter came on Tax Day, April 15, 2005.[2] This time it was a two-sided document. The front side bore the same format as the previous letter but with higher figures. It listed both the "current balance" and "amount due" as $1,160.57. The back side, however, broke this sum down into its component parts, accounting for the increase since the previous letter. The "principal balance," or past due amount, was identified as $1,149.09. And the difference between that figure and the current amount due—$11.48—was attributed to "accrued interest," all leading to the "new balance" (called the "current balance" and "amount due" on the front side) of $1,160.57.

The final letter made its way to Wahl some four months later, in August 2005. It was drawn up in an identical format, but naturally Midland wanted more money. This time the "current balance" and "amount due" were $1,181.49, accounting for a total of $32.40 in "accrued interest" since Midland purchased the debt. As before, the interest was listed on the back side of the form, as was the "principal balance" of $1,149.09 and the "new balance" of $1,181.49.

---

[2] Actually, there was an intervening letter, but that's not relevant for our purposes.

At the risk of both repetition and stating the obvious, we emphasize that the amount designated as "principal balance" in both these letters ($1,149.09) included interest and late fees that accrued on the account under BP. In other words, the "principal balance" was what Wahl owed BP before BP transferred the account to Midland for collection.

Against this backdrop, and with no inclination to pay, Wahl filed a putative class-action complaint in the Northern District of Illinois. Though she asserted two counts under the FDCPA, only one of them—we'll call it the "principal-and-interest" count—is before us on this appeal. Here it is in a nutshell: Debt collectors need not say anything more than the amount sought, but if they do elect to specify principal and interest components, they must indicate the principal charges levied by the original account holder, the interest levied by the original account holder, and the interest levied by the debt collector. Otherwise, Wahl claims, the statement is false—because "principal" cannot include any amount of interest. Wahl says the collection letters in this case violated this rule because the "principal balance" included interest charged by BP, a fact that was not disclosed like the interest charged by Midland.

The court certified a class action under Rule 23 as to the principal-and-interest count, and the parties filed cross-motions for summary judgment. At that stage, the district court sided with Midland. Relying on *Barnes v. Advanced Call Center Technologies, LLC*, 493 F.3d 838 (7th Cir. 2007), the court held that the FDCPA was not violated

because, regardless of the nature and amount of the debt owed to BP, Midland accurately stated the amount *it* was seeking. We agree. Even though we review a decision granting summary judgment *de novo*, drawing all reasonable inferences in favor of the losing party, *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1110-11 (7th Cir. 2008), Wahl's claim is dead in the water.

Wahl contends that the letters in this case violated the FDCPA's prohibition against false or misleading information in collection notices. Codified at 15 U.S.C. § 1692e, that prohibition is unequivocal: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Practices that run afoul of this command include "[t]he false representation of . . . the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), as well as "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt," 15 U.S.C. § 1692e(10).

Wahl's argument under § 1692e—hypertechnical at best—is flawed from beginning to end. Initially, she misconstrues the statute. She says she is not arguing that the collection letters were "misleading" or "deceptive," but only that they were "false," and that the statute creates an important distinction between these concepts. Where a plaintiff alleges that a collection statement is false (rather than deceptive or misleading), Wahl contends, the only determination for the court is whether the statement is in fact false. "It is unnecessary to determine whether the unsophisticated consumer would

be deceived or misled or confused by the alleged false statement." That could not be further from the truth.

In deciding whether collection letters violate the FDCPA, we have consistently viewed them through the eyes of the "unsophisticated consumer." *Barnes*, 493 F.3d at 841; *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004); *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). The "unsophisticated consumer" isn't a dimwit. She may be "uninformed, naive, [and] trusting," *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003), but she has "rudimentary knowledge about the financial world" and is "capable of making basic logical deductions and inferences," *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense. For purposes of § 1692e, then, a statement isn't "false" unless it would confuse the unsophisticated consumer. *See Turner*, 330 F.3d at 995 ("[O]ur test for determining whether a debt collector violated § 1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer."). So, while the FDCPA is a strict liability statute—a collector "need not be deliberate, reckless, or even negligent to trigger liability," *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007)—the state of mind of the reasonable debtor is *always* relevant. The upshot? Wahl can't win simply by showing that Midland's use of the term "principal balance" is false in a technical sense; she has to show that it would mislead the unsophisticated consumer.

But even assuming Wahl's construction of § 1692e to be right, we see no falsity (technical or otherwise) in Midland's approach. Wahl says that it is false to describe as a "principal balance" any sum of money that contains interest. As the American Heritage Dictionary of the English Language (3d ed. 1992) explains, when used as an adjective, "principal" describes an original "sum of money owed as a debt, upon which interest is calculated," and a "balance" is the difference between "the debit and credit sides of an account." That admittedly makes a "principal balance" the starting or original amount owed, exclusive of interest. Now, with this, Wahl would say she is vindicated. The starting or original amount owed, she would say, was what she actually charged on the BP card. It follows that none of the interest, whether tacked on by BP or Midland, is part of the "principal balance." And since Midland included the BP interest within the "principal balance" figure, it uttered a falsehood. But this logic ignores Midland's role in the process entirely. The interest charged by BP was very much part of the principal balance in *Midland's* eyes. Midland obtained the entire BP debt,[3] including interest, so the starting or original amount owed, as far as it was concerned, was indeed $1,149.09.

Applying the true test, moreover, we see no way this language would confuse the reasonable consumer, unsophisticated though she may be. Midland simply identified the total amount it sought and then explained how it

---

[3] Probably, we assume, for pennies on the dollar.

arrived at that sum (listing the debt it acquired from BP and its own interest charges). The unsophisticated consumer, with a reasonable knowledge of her account's history, would have little trouble concluding that the "principal balance" included interest charged by BP. Granted, Midland could have *elected* to go a step further, disclosing the components of the debt it acquired—such as what Wahl charged on the card versus the interest and late fees levied by BP—but it wasn't a matter of compulsion. It was enough for purposes of § 1692e that Midland's statements were not false or misleading.

Finally, we agree with the district court that Wahl cannot get past *Barnes*. Although that case dealt with a different provision of the FDCPA, § 1692g rather than § 1692e, it involved a principle equally germane to Wahl's suit. In *Barnes*, we rejected a consumer's argument that a collector failed to state "the amount of the debt" as required by § 1692g when the collector stated the amount past due and in collection, but not the overall credit card balance. *Barnes*, 493 F.3d at 839. We noted that, while the amount of the debt from the perspective of the credit card company might be the running balance, the amount of the debt from the collector's perspective was what *it* was seeking. *Id.* at 840. Like Barnes, Wahl "forget[s] who the defendant is." *See id.* If BP authored a letter identifying as the "principal balance" a sum containing massive amounts of interest charged at its own hand, that would have been misleading. But the nature of the debt owed to BP "is of no consequence to this case." *See id.* The defendant here is Midland—the debt collector, not the creditor—and that changes everything.

Wahl's argument rests on empty semantics and conflicts with *Barnes*. The judgment of the district court is AFFIRMED.