In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2729

JEFFREY LOX,

*Plaintiff-Appellant,*

*v.*

CDA, LIMITED, doing business as
Creditors Discount & Audit Company,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:10-cv-01042—**John A. Gorman**, *Magistrate Judge.*

ARGUED MAY 25, 2012—DECIDED AUGUST 2, 2012

Before POSNER, FLAUM, and WOOD, *Circuit Judges.*

FLAUM, *Circuit Judge.* In 2005, Jeffrey Lox received medical treatment from Dr. Mark Baylor, and as a result, he incurred a debt. Lox failed to pay, and so his debt was referred by Dr. Baylor to Creditors Discount & Audit Company ("CDA"), a debt collection agency. One of the ways by which CDA attempted to collect Lox's debt was through dunning letters, and one of those dunning

letters included a warning that failure to pay his debt could lead to a lawsuit brought against Lox. The letter further stated that if Dr. Baylor was successful in his lawsuit, Lox could be ordered by the court to pay Dr. Baylor's attorney fees. Lox contends that Dr. Baylor could not, under any circumstances, have recovered attorney fees from Lox, and thus believes that the several dunning letters sent to him by CDA violated the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, et seq. Lox advanced this theory in a suit against CDA brought in the Central District of Illinois. The district court disagreed with Lox's assessment of the dunning letters and granted CDA's summary judgment motion. Lox now appeals the district court's decision. For the following reasons, we reverse the ruling of the district court.

## I. Background

Jeffrey Lox is a resident of Glasford, Illinois, and at some point in 2005, he suffered an injury, the nature and cause of which are irrelevant to the disposition of this appeal. He went to Dr. Baylor to be treated for his injury, and before receiving medical care, he signed a Patient Registration Form. The form stated, inter alia:

> All professional services rendered are charged to the patient. The patient is responsible for all fees, regardless of insurance coverage. It is customary to pay for services when rendered unless other arrangements have been made in advance with our office bookkeeper.

After being treated by Dr. Baylor, Lox owed $235.07. He lost his job around this time, and thus was unable (or unwilling) to pay his bill.

The debt was eventually referred by Dr. Baylor to CDA, and over the course of nine months or so, CDA sent Lox numerous debt collection letters and made several debt collection phone calls. Two of the debt collection letters included the following warnings:

> You have the right to pay this claim now. To avoid further steps, respond within 48 hours. Consider our clients [sic] lawful alternatives closely. Our client may take legal steps against you and if the courts award judgement, the court could allow court costs and attorney fees.

On February 19, 2010, Lox filed a complaint in the Central District of Illinois, alleging that CDA violated the FDCPA by way of several improper statements found in the various collection letters sent to Lox. One of Lox's claims was that the language concerning attorney fees, quoted above, was false and misleading, and thus ran afoul of 15 U.S.C. §1692e, which states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." At his deposition, Lox had this to say about the relevant attorney fees language:

> Q. Do you think that it's deceptive or deceiving?
>
>  . . .
>
> A. Yes.

Q.  Why?

A.  Because I wouldn't have to pay for the attorney fees.

Q.  Okay. What do you mean by that? Can you explain that further?

A.  I wouldn't have to pay for the attorney's fees.

Q.  It's deceptive because you personally wouldn't have to pay for attorney's fees?

. . .

A.  [No audible response.]

Q.  Okay. And why—why would you not have to pay for attorney's fees?

. . .

A.  Why would I have to pay for attorney's fees? Why would I pay for the opposing side's attorney fees?

Q.  All right. So that's—you just don't believe that you would?

A.  No.

After discovery, both parties filed summary judgment motions. Lox's motion claimed, among other things, that the pertinent debt-collection language quoted above falsely threatened that a court could award attorney fees. He did not present any extrinsic evidence to support the misleading nature of the language, but rather relied on his own assertions. The magistrate judge handling the suit denied Lox's motion and granted CDA's summary

judgment motion, finding that the letters in question made no specific demand for attorney fees and did not state a specific amount of attorney fees that would be owed. The magistrate judge also found the use of conditional language (i.e., "our client *may* take legal steps" and "the court *could* allow . . . attorney fees" (emphasis added)) to be relevant, and ruled that no reasonable consumer could have believed that he owed more than the debt due upon receipt of the letter. On these bases, the magistrate judge ruled that the attorney fees language was not violative of the FDCPA.

Despite the fact that the magistrate judge granted CDA summary judgment on all of Lox's FDCPA claims, Lox only appeals the court's dismissal of his challenge to the attorney fees language.

## II. Discussion

When a district court grants a party's summary judgment motion, we review that decision de novo. *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 839 (7th Cir. 2011). "We construe facts favorably to the nonmoving party and grant the nonmoving party 'all reasonable inferences' in its favor." *Bagley v. Blagojevich*, 646 F.3d 378, 388 (7th Cir. 2011) (quoting *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010)).

As stated above, the FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This is a broad prohibition, and while § 1692e

has 16 subsections describing ways by which a debt collector could violate the FDCPA, that list is nonexhaustive, *Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002), and a plaintiff need not allege a violation of a specific subsection in order to succeed in a § 1692e case, *Ruth v. Triumph P'ships*, 577 F.3d 790, 794 n.2 (7th Cir. 2009). Despite the breadth of § 1692e's coverage, however, there are limits to its reach. As we made clear in *Wahl v. Midland Credit Mgmt.*, a statement made by a debt collector that is technically false but in no way misleading does not run afoul of § 1692e. 556 F.3d 643, 645-46 (7th Cir. 2009). Instead, we use the "unsophisticated consumer" standard, as we do with all claims under § 1692e, and "[f]or purposes of § 1692e . . . a statement isn't 'false' unless it would confuse the unsophisticated consumer." *Id*. at 646. The unsophisticated consumer may be "uninformed, naïve, [and] trusting," *Veach v. Sheeks,* 316 F.3d 690, 693 (7th Cir. 2003), but is not a dimwit, has "rudimentary knowledge about the financial world," and is "capable of making basic logical deductions and inferences," *Wahl*, 556 F.3d at 645 (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). Furthermore, because we have rejected the "least sophisticated consumer" standard, a letter must be confusing to "a significant fraction of the population." *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004).

Contrary to some other circuits, *see, e.g., Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 n.3 (9th Cir. 2011), we treat the question of whether an unsophisticated consumer would find certain debt collection

language misleading as a question of fact. *See Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999). As an outgrowth of this practice, we have determined that there are three categories of § 1692e cases. *Ruth*, 577 F.3d at 800. The first category includes cases in which the allegedly offensive language is plainly and clearly not misleading. *Id*. In cases of this nature, no extrinsic evidence is needed to show that the reasonable unsophisticated consumer would not be confused by the pertinent language. *Id*. The second category of cases includes debt collection language that is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer. *Id*. If a case falls into this category, "we have held that plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id*. The final category includes cases involving letters that are plainly deceptive or misleading, and therefore do not require any extrinsic evidence in order for the plaintiff to be successful. *Id.* at 801.

Thus, to succeed on this appeal, Lox must convince us that CDA's statement regarding attorney fees is not only false, but would mislead the unsophisticated consumer. Further, since Lox did not present any extrinsic evidence at the summary judgment stage, he must show that the statement is plainly and clearly misleading on its face, thus eliminating any need for evidence of its deceptive nature. There is one more hurdle that Lox must clear to succeed as well. In *Hahn v. Triumph P'ships*, we observed that "[m]ateriality is an ordinary element of

any federal claim based on a false or misleading state-ment," and we determined that § 1692e claims are no exception to this requirement. 557 F.3d 755, 757-58 (7th Cir. 2009). Therefore Lox must also demonstrate that CDA's attorney fees language constituted a *materially* false statement.

Lox argues that he has cleared all of these hurdles. He believes that the clear language in CDA's letters intimated that if Lox did not pay his debt, CDA could have filed suit, and a court would have had the legal authority to impose CDA's attorney fees upon Lox. This, Lox claims, was in violation of the FDCPA, since, under the so-called "American Rule," a losing party cannot be charged with the winning party's attorney fees unless a statute or a contract explicitly states otherwise. Lox contends that CDA's statement was so clearly false and misleading that no extrinsic evidence is necessary to prove its deceptive nature. He further argues that the conditional nature of the statement at issue (i.e., that a court *could* impose attorney fees *if* CDA were to bring suit) does not save the practice, since there are no cir-cumstances under which attorney fees could have been levied against Lox. Finally, Lox claims that this false statement was material, since it suggested that Lox may have had to pay more than the actual amount owed to Dr. Baylor if Lox did not pay his debt off within 48 hours.

CDA disagrees, arguing that it is hard to even assign a truth-value to the attorney fees language, since it was couched in so many conditionals. CDA contends that in order to run afoul of § 1692e, the language would

have had to include either a statement suggesting that CDA or Dr. Baylor intended to seek attorney fees or a threat of a specific amount of attorney fees. CDA also believes that even if the attorney fees language was not clearly proper on its face, Lox would have needed to present extrinsic evidence to prove that the statement was misleading. CDA next argues that regardless of whether or not the statement was misleading, it was not material for two reasons: (1) it would not have had an effect on the reasonable unsophisticated consumer; and (2) Lox's deposition testimony suggests that he never believed that he would have to pay attorney fees, and thus the statement could not have caused him to act any differently than he would have but for the letters. CDA's final argument is that Lox did not bring up this particular language until his summary judgment motion. Since the statement was not mentioned in either his complaint or his amended complaint, therefore, the argument should be deemed waived, or so CDA contends.

As to the first question—whether CDA's statement regarding attorney fees was actually false—Lox presents several sources explaining that both Illinois and the federal courts follow the so-called "American Rule"—the rule that disallows the award of attorney fees absent a contractual or statutory exception. *See Hardt v. Reliance Std. Life Ins. Co.*, 130 S.Ct. 2149, 2156-57 (2010); *Krantz v. Chessick*, 668 N.E.2d 77, 81 (Ill. App. Ct. 1996). Lox also asserts that the only reference to fees in the agreement between himself and Dr. Baylor refers to medical fees, not attorney fees, *see supra* section I, thus preventing any possibility that a contractual basis for attorney fees

exists. CDA does not contest either of these assertions, and thus the parties agree (at least through waiver) that attorney fees could not have been awarded to CDA, the debt collection letters notwithstanding.

The district court nonetheless held, "It is almost impossible to characterize [the] statement as true or false, given the multiple hypothetical words contained in [the] single sentence." In support of this conclusion, the district court cites *Taylor*, 365 F.3d 572, observing that "the Seventh Circuit found 'downright frivolous' the claim that a letter was false because it said the creditor 'might' add interest." As an initial matter, the district court was incorrect to say that the pertinent statement could not be deemed true or false. The statement at issue is the following: "Our client may take legal steps against you and if the courts award judgement, the court could allow court costs and attorney fees." The clear meaning of this statement is that if CDA decided to bring legal action against Lox and was victorious, the award of attorney fees to CDA was one possible outcome. CDA admits (through waiver) that the award of attorney fees was not a possible outcome; thus, the statement is false.

As for the district court's reliance on *Taylor*, it is misplaced. In *Taylor*, the dunning letter at issue stated that "*if applicable*, your account may have or will accrue interest at a rate *specified in your contractual agreement with the original creditor*." *Id*. at 574 (both emphases added). The only reasonable interpretation of this statement, even for an unsophisticated consumer, is that interest might accrue *if* the debtor's original debt agree-

ment provided for such interest. There is no similar limiting language in this case. If CDA's dunning letter stated that attorney fees could be awarded *if* Lox's agreement with Dr. Baylor provided for such fees, then *Taylor* would be an apt comparison, but this language is not present. As the statement was actually written, it is false, and therefore may be in violation of § 1692e.

As stated above, however, technical falsity is not enough for a statement to be violative of § 1692e—it must actually be misleading to the unsophisticated consumer. *Wahl*, 556 F.3d at 645-46. Further, Lox has not presented any extrinsic evidence illustrating the deceptive nature of the statement, and thus he must convince us that it is misleading on its face. *Ruth*, 577 F.3d at 800-01. The district court held that the lack of any specific demand for or amount of attorney fees in the relevant statement would make it unreasonable for an unsophisticated consumer to believe that "he must presently pay some unspecified amount of attorney fees in order to satisfy the debt." As Lox correctly points out, however, the district court misunderstood Lox's argument. He is not suggesting that an unsophisticated consumer would believe the letters to say that attorney fees had already been added to the debt. Rather, he argues that CDA falsely implied that one possible outcome of Lox's failure to promptly pay his debt was the incurrence of the obligation to pay CDA's attorney fees. Lox contends that the unsophisticated consumer is not aware of the American Rule on attorney fees, and thus a false statement from a debt collector that attorney fees could be levied against a debtor would undoubtedly mislead said

unsophisticated consumer about the possible con-
sequences of his various courses of action. In addition,
he argues that the use of conditional language (i.e., "[o]ur
client *may* take legal steps," "*if* the courts award judg-
ment," and "the court *could* allow . . . attorney fees") does
not make the statement any less confusing, and thus
does not save the practice.

In support of his argument, Lox cites several cases,
beginning with *Ruth*. In *Ruth*, the defendant sent a debt
collection letter warning, "To the extent permitted by
law, we may collect and/or share all the information
we obtain in servicing your account." *Id* at 793. In
reality, the defendant was legally barred from sharing
any information about the plaintiff absent consent. *Id*.
at 801. Despite the conditional nature of the pertinent
statement, we held that "the only reasonable conclusion
that an unsophisticated consumer . . . could reach is
that the defendants were claiming a legal right to
disclose the nonpublic information about the
debtor . . . and were threatening to do so." *Id*. Lox also
cites *Gonzales*, a Ninth Circuit case in which a debt col-
lector sent a collection letter that stated "if we are
reporting the account, the appropriate credit bureaus
will be notified that this account has been settled." 660
F.3d at 1059. The court held, "As there is no cir-
cumstance under which Arrow could legally report an
obsolete debt to a credit bureau, the implication that
Arrow could make a positive report in the event of pay-
ment is misleading." *Id*. at 1063. In reaching this con-
clusion, the Ninth Circuit reasoned that "[c]onditional
language, particularly in the absence of any language

clarifying or explaining the conditions, does not insulate a debt collector from liability." *Id*.

*Ruth* and *Gonzales* establish that it is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass. *See Ruth*, 577 F.3d at 801; *Gonzales*, 660 F.3d at 1063. We have that situation here, since there is only one reasonable interpretation of CDA's attorney fees language: that a lawsuit is a possible outcome of nonpayment, and that attorney fees are a possible outcome of a lawsuit. As explained above, the latter part of this proposition is false. While it is true that the unsophisticated consumer has a "rudimentary knowledge about the financial world," *Wahl*, 556 F.3d at 645, we do not presume that the same consumer has knowledge of relevant legal precedent. *Cf. Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1056 (8th Cir. 2002) ("[A]n unsophisticated consumer cannot be expected to know the legal meanings of terms . . . . "). The naive, trusting, unsophisticated consumer is therefore likely to believe a debt collector when it says that attorney fees are a potential consequence of nonpayment, and the language at issue is therefore misleading. Perhaps CDA could argue—though it did not—that its letter was a form letter, and that it was not distinguishing between debtors that have contracts providing for attorney fees and debtors without such contracts, thus making it true that, in relation to *all* debtors, attorney fees *could* be applied. Even if this were the case, we agree with the Ninth Circuit's advice to debt collectors: "When language in a debt collection letter can reasonably be interpreted to

imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril." *Gonzales*, 660 F.3d at 1063.

CDA provides two counterarguments to this reasoning, both of which are unavailing. First, CDA argues that the letters never suggest that either CDA or Dr. Baylor would seek attorney fees, and thus it would be unreasonable for an unsophisticated consumer to interpret the statement as a threat. This fact is unimportant, for someone in Lox's position would not care whether the assessment of attorney fees is initiated by a court or an opposing party, nor would he know that a court would only impose such fees upon request of an opposing party. The language at issue was clearly suggesting that Lox needed to pay his debt, lest several unattractive consequences befall him, including the assessment of attorney fees.

CDA also contends that Lox never believed that he would need to pay for CDA's attorney fees, regardless of what the hypothetical unsophisticated consumer would have believed. CDA bases this argument on one line from Lox's deposition, where Lox stated, "Why would I have to pay for attorney fees? Why would I pay for the opposing side's attorney fees?" As Lox points out, however, this deposition took place well after Lox had retained an attorney about the many dunning letters that Lox received, and that attorney presumably informed Lox that attorney fees could not be levied against a losing litigant absent a contract or statute that

says otherwise. The deposition testimony therefore does not indicate what Lox believed regarding attorney fees at the time he received the letters in question. Further, even if Lox had an inclination that attorney fees could not be assessed against him, that fact is not dispositive for three reasons. First, an unsophisticated consumer without the knowledge of a lawyer could likely be shaken from a general belief that attorney fees cannot be assessed against a losing party if a debt collector implies that attorney fees are, in fact, a legitimate possibility. Second, Lox could have been concerned about the mere possibility of a fight over attorney fees, even if he felt confident that he would win that fight. *Cf. Captain v. ARS Nat'l Servs., Inc.*, 636 F. Supp. 2d 791, 796-97 (N.D. Ill. 2009) (observing that "[p]arties often knowingly make threats of illegal action," and that "[t]he statement that a debt collector plans to add a $15 per day charge to an account (regardless of its legality) would, at the very least, mislead a competent lawyer about whether the company actually planned to add the charge"). Finally, and most importantly, the unsophisticated consumer test is "an objective one," *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 677-78 (7th Cir. 2007), meaning that it is unimportant whether the individual that actually received a violative letter was misled or deceived. *Accord Gonzales*, 660 F.3d at 1062 ("[A]n unusually savvy consumer (such as [plaintiff]) would seek clarification of whether his debt could be reported. We are not, however, to read the language from the perspective of a savvy consumer, and consumers are under no obligation to seek explanation of confusing or misleading

language in debt collection letters."); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) ("The least-sophisticated-consumer test is objective and is designed 'to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.'" (quoting *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007)).

For the reasons discussed, the statement at issue was not only false, but misleading. Further, the letter is misleading on its face, and extrinsic evidence is unnecessary. CDA baldly argues that the attorney fees statement is not plainly misleading, and thus extrinsic evidence is necessary to illustrate confusion. But assuming that attorney fees could not, under any circumstances, have been assessed against Lox in an action brought by CDA—which we must, since they did not argue otherwise—there is no question of interpretation remaining. To believe the letter was to believe a statement that, in reality, was false. The only question remaining would be whether the hypothetical, unsophisticated consumer is aware of the "American Rule," and thus would disbelieve CDA's assertion. This is not the type of legal knowledge we can presume the general public has at its disposal. We therefore find CDA's language to be misleading on its face.

The next question we must answer is whether CDA's misleading statement regarding attorney fees is material. In *Hahn*, we established that a false or misleading statement is only actionable under the FDCPA if it is material, 557 F.3d at 757, meaning that it has "the ability

to influence a *consumer's* decision," *O'Rourke v. Palisades Acquisition XVI, LLC,* 635 F.3d 938, 942 (7th Cir. 2011) (emphasis in original). The allegedly false language at issue in *Hahn* involved the classification of debt. *Hahn,* 557 F.3d at 756. The plaintiff argued that the defendant only labeled $82.64 of her debt as interest, when in reality much more of the debt was interest. *Id.* We disagreed, finding that the defendant's statements were not actually false, but we also held that even if the statements were false, they were immaterial. *Id.* at 757. We reasoned that "the difference between principal and interest is no more important to the Fair Debt Collection Practices Act than the color of the paper that [the defendant] used," because "[a] dollar due is a dollar due." *Id.* It would be different, we maintained, if the rate of interest were misstated, since that would lead to a real injury. *Id.* Similarly, in *Donahue v. Quick Collect Inc.,* cited by CDA, the Ninth Circuit held that the mislabeling of a debt's principal and interest was immaterial, since the total amount of the debt was accurately reported and the plaintiff would not have altered her behavior if the debt were properly labeled. 592 F.3d 1027, 1034 (9th Cir. 2010).

CDA suggests that the statement at issue here, like the statements in *Donahue* and *Hahn*, was immaterial, since no additional amount of debt was reported, and thus Lox would not have taken a different course of action if the attorney fees statement were absent from the dunning letters. We disagree. In *Hahn* and *Donahue*, the alleged false statements did not, and could not, have any effect on the amount of debt owed by the plaintiff,

regardless of when plaintiff decided to pay off the debt. Here, Lox would not have had to pay any additional money if he paid his debt immediately upon receipt of the dunning letters, but if CDA's statement regarding attorney fees were accurate, a decision to contest the debt could have turned out to be much more costly. Whether or not this fact would have led Lox to alter his course of action, it would have undoubtedly been a factor in his decision-making process, and very well could have led to a decision to pay a debt that he would have preferred to contest. The false statement was therefore material.

The final question we must confront is whether Lox waived the argument that the attorney fees language was violative of the FDCPA. CDA contends that Lox did not identify this language as constituting an FDCPA violation until his summary judgment motion, and thus waived the argument. A review of Lox's amended complaint reveals that he did not specifically quote the language at issue when describing the violations that occurred. He did, however, attach a copy of the allegedly violative letter to his amended complaint and stated generally that all of CDA's dunning letters violated § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect." 15 U.S.C. § 1692e(10). Further, in response to CDA's interrogatories, Lox stated that all the language found in a specified portion of the letters in question was violative of the FDCPA, and the attorney fees language resided within that section. Finally, CDA specifically questioned Lox about the pertinent language at his deposition and why

it might be false or misleading, illustrating that CDA was, in fact, put on notice of this claim. We therefore hold that Lox's argument about the false and misleading nature of CDA's attorney fees assertion was not waived.

### III. Conclusion

For the reasons stated above, we hold that the attorney fees statements found in CDA's dunning letters were materially false and misleading on their face. We therefore REVERSE both the grant of CDA's summary judgment motion and the denial of Lox's summary judgment motion, and REMAND to the district court for proceedings consistent therewith.