In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2308

RYAN BOUCHER, *et al.*,

*Plaintiffs-Appellants,*

*v.*

FINANCE SYSTEM OF GREEN BAY, INC., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:17-cv-132 — **William C. Griesbach**, *Judge.*

ARGUED DECEMBER 1, 2017 — DECIDED JANUARY 17, 2018

Before BAUER, FLAUM, and ROVNER, *Circuit Judges.*

FLAUM, *Circuit Judge.* Plaintiffs sued defendant, a debt collection agency, for violations of the Fair Debt Collection Practices Act ("FDCPA"). Specifically, plaintiffs allege that defendant's dunning letters were false and misleading because they threatened to impose "late charges and other charges" that could not lawfully be imposed. The district court dismissed plaintiffs' claims because the challenged statement mirrors the safe harbor language that this Court instructed

debt collectors to use in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872 (7th Cir. 2000). The district court further held that defendant's failure to remove the reference to "late charges and other charges" was not materially misleading. For the reasons below, we reverse.

## I. Background

Plaintiffs are Wisconsin residents who incurred and defaulted on debts for medical services. Plaintiffs' creditors assigned these debts to defendant, Finance System of Green Bay, Inc. ("FSGB"), a collection agency. In turn, FSGB sent plaintiffs a letter informing them of their principal balance, their interest balance, and their total account balance. The letter also included the following statement:

> As of the date of this letter, you owe $[a stated amount]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check. For further information, write to the above address or call [phone number].

On January 30, 2017, plaintiffs filed a class action complaint against FSGB in the Eastern District of Wisconsin for violations of the FDCPA, 15 U.S.C. §§ 1692–1692p. Plaintiffs allege that FSGB's letter is false because under Wisconsin law, FSGB cannot lawfully or contractually impose "late charges and other charges." Plaintiffs further allege that the letter causes unsophisticated consumers to incorrectly believe that they will avoid such charges, and thus benefit financially, if they immediately send payment. For these reasons, plaintiffs

claim that the letter is false, misleading, and deceptive in violation of § 1692e. Plaintiffs also claim that the letter fails to properly state the amount of debt, as required by § 1692g(a)(1).

In its motion to dismiss, FSGB argued that it complied with the FDCPA as a matter of law because the allegedly false statement tracks the safe harbor language provided by this Court in *Miller*. FSGB further asserted that, although it may not lawfully impose "late charges and other charges," the reference to such charges was not materially misleading because it is entitled to charge interest.

The district court granted defendants' motion to dismiss. In doing so, it acknowledged that some of the *Miller* safe harbor language—namely, the phrase "late charges and other charges"—does not "strictly" apply in this case. *Boucher v. Fin. Sys. of Green Bay, Inc.*, No. 17-cv-132, 2017 WL 2345678, at *4 (E.D. Wis. May 30, 2017). However, it reasoned that "the central purpose of *Miller*'s safe harbor formula is to provide debt collectors with a way to notify debtors that the amounts they owe may ultimately vary." *Id.* Accordingly, it concluded that debt collectors like FSGB may rely on the *Miller* safe harbor language as long as the debt is variable in some way—regardless of "whether the increase occurred because of interest, late charges, other charges, some combination thereof, or all of the above." *Id.* Because FSGB's letter conveyed "the crucial fact" that plaintiffs' debts were variable, the court concluded that FSGB was entitled to safe harbor protection under *Miller*. This appeal followed.

## II. Discussion

We review de novo a district court's decision to grant a motion to dismiss under Rule 12(b)(6). *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). In doing so, we accept as true all factual allegations in the complaint and draw all permissible inferences in plaintiffs' favor. *Id.* To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### A. FSGB's Dunning Letter is Materially False, Misleading, and Deceptive in Violation of § 1692e

The FDCPA broadly prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Along with this general prohibition, the statute lists specific examples of prohibited conduct. *See id.*; *see also Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002) (describing this list as "nonexclusive"). The following examples are relevant here: "[t]he false representation of … the character, amount, or legal status of any debt"; "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken"; and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt …." 15 U.S.C. § 1692e(2)(A), (5), (10).

Even if a statement in a dunning letter is "false in some technical sense," it does not violate § 1692e unless it would confuse or mislead an unsophisticated consumer. *See Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645–46 (7th Cir. 2009); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). "The unsophisticated consumer is 'uninformed, naive, [and] trusting,' but possesses 'rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses "reasonable intelligence," and is capable of making basic logical deductions and inferences.'" *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007) (alteration in original) (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). An unsophisticated consumer "may tend to read collection letters literally, [but] he does not interpret them in a bizarre or idiosyncratic fashion." *Pettit*, 211 F.3d at 1060. That is, "[t]he 'unsophisticated consumer' isn't a dimwit." *Wahl*, 556 F.3d at 645.

Moreover, "[a] statement cannot mislead unless it is material." *Hahn v. Triumph P'hips, LLC*, 557 F.3d 755, 758 (7th Cir. 2009). After all, "[t]he purpose of the Fair Debt Collection Practices Act is to protect consumers, and they don't need protection against false statements that are immaterial in the sense that they would not influence a consumer's decision." *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009). In this context, a statement is material if it would "influence a consumer's decision … to pay a debt in response to a dunning letter." *Id.*

Thus, to state a claim under § 1692e, plaintiffs must plausibly allege that FSGB's dunning letter would materially mis-

lead or confuse an unsophisticated consumer. Because this inquiry involves a "fact-bound determination of how an unsophisticated consumer would perceive the statement," dismissal is only appropriate in "cases involving statements that plainly, on their face, are not misleading or deceptive." *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812, 814–15 (7th Cir. 2016) (quoting *Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009)); *see also Zemeckis v. Glob. Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) ("As a general matter, we view the confusing nature of a dunning letter as a question of fact that, if well-pleaded, avoids dismissal on a Rule 12(b)(6) motion.") (internal citation omitted). "We have cautioned that a district court must tread carefully before holding that a letter is not confusing as a matter of law when ruling on a Rule 12(b)(6) motion because 'district judges are not good proxies for the "unsophisticated consumer" whose interest the statute protects.'" *McMillan v. Collection Prof'ls., Inc.*, 455 F.3d 754, 759 (7th Cir. 2006) (quoting *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501–03 (7th Cir. 1999)).

In *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012), we held that a dunning letter is false and misleading if it "impl[ies] that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass." The dunning letter in *Lox* stated the following: "Our client may take legal steps against you and if the courts award judgement, the court could allow court costs and attorney fees." *Id.* at 820–21. The plaintiff moved for summary judgment, claiming that this language was false and misleading as a matter of law because "[the creditor] could not, under any circumstances, have recovered attorney fees from [him]." *Id.* at 820. This was so because, under the so-called "American

Rule," courts do not award attorney fees unless there is an explicit contractual or statutory exception. *See id.* at 823. Because the debt collector failed to identify any applicable exception, it effectively "admit[ted] (through waiver) that the award of attorney fees was not a possible outcome." *Id.* at 824. Thus, we concluded that the statement about attorney fees was false. *Id.* In addition, the statement was misleading to an unsophisticated consumer, who "is not aware of the American Rule on attorney fees," and "is therefore likely to believe a debt collector when it says that attorney fees are a potential consequence of nonpayment." *Id.* at 824–25.

Here, as in *Lox*, the challenged statement is misleading to an unsophisticated consumer. The dunning letter states that, "[b]ecause of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater." While creditors of medical debts may charge interest, FSGB admits that it cannot impose "late charges and other charges" under Wisconsin law. Therefore, the dunning letter falsely implies a possible outcome—the imposition of "late charges and other charges"—that cannot legally come to pass. *See id.* at 825. This statement is misleading to an unsophisticated consumer because "[t]his is not the type of legal knowledge we can presume the general public has at its disposal." *Id.* at 826.[1]

---

[1] Although the dunning letter uses the word "may," the presence of hypothetical language does not make the statement less confusing. *See Lox*, 689 F.3d at 825 ("[C]onditional language, particularly in the absence of any language clarifying or explaining the conditions, does not insulate a debt collector from liability." (quoting *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1063 (9th Cir. 2011))). The challenged statement in *Lox* also used "multiple hypothetical words" like "may" and "could." *Id.* at 823–24. However, we explained that "[t]he clear meaning of this statement is

The next question is whether the challenged statement is material—i.e., whether the potential imposition of "late charges and other charges" would influence an unsophisticated consumer's decision to pay the debt. The district court reasoned that, as long as the debt collector communicates that the debt is variable, the ultimate basis for an increase is immaterial. Similarly, FSGB argues that "[a]ny consumer who owes a variable debt must decide whether to pay sooner than later to avoid that variance, regardless of whether any increase in the amount of the debt is due to the addition of interest, late charges, other charges, or some combination thereof."

We disagree. Of course, debtors always have *some* incentive to pay variable debts as quickly as possible, regardless of the source of variability. However, this incentive is even greater if the debt collector threatens to impose "late charges and other charges" in addition to interest.[2] Here, the letter does not say how much the "late charges" are or what "other charges" might apply, so consumers are left to guess about the

---

that if [the debt collector] decided to bring legal action against [the debtor] and was victorious, the award of attorney fees to [the debt collector] was one possible outcome." *Id.* Because the debt collector conceded that this was not possible, the statement was misleading. *Id.* Similarly, the challenged statement here falsely suggests that the imposition of late charges and other charges is a possible consequence of nonpayment.

[2] It is worth noting that plaintiffs owed little to no interest on their medical debts in this case. For example, plaintiffs Christopher and Michele Dettloff had an interest balance of $0.00; plaintiff Adam Duch had an interest balance of $0.00; and plaintiffs Ryan and Heather Boucher had an interest balance of just $0.09. Because the amount of interest was negligible, the purported "late charges and other charges" would likely have played an even more important role in the consumer's decision whether to pay the debt.

economic consequences of failing to pay immediately. But re-gardless of the amount of such charges, an unsophisticated consumer understands that these additional charges could further increase the amount of debt owed, thus potentially making it "more costly" for the consumer to hold off on pay-ment. *Id.* at 827. Even if these additional charges are minimal, such that they might not "alter [the consumer's] course of ac-tion," they are still material because they would be "a factor in his decision-making process." *Id.*[3]

This is especially true for consumers who are subject to debt collection activity. We have acknowledged that "[w]hen default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce." *McMillan*, 455 F.3d at 762 (quoting S. Rep. No. 95–382, at 2 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1697). Because these consumers must of-ten make difficult decisions about how to use scarce financial resources, it is plausible that the fear of "late charges and other charges" might influence these consumers' choices. Therefore, the challenged statement is material.

In sum, plaintiffs have plausibly alleged that the dunning letter was materially false and misleading to an unsophisti-cated consumer in violation of § 1692e.

---

[3] Moreover, even unsophisticated consumers understand that interest payments represent a contractual arrangement to pay more for the benefit of delaying full payment. In contrast, the purpose of "late charges" is to punish the consumer for violating the contract. The punitive nature of "late charges" might further incentivize an unsophisticated consumer to pay off the debt.

### B.  The *Miller* Safe Harbor Does Not Apply

FSGB argues that it is nevertheless immune from liability because it used the safe harbor language provided by this Court in *Miller*.

In *Miller*, we addressed whether defendants had violated a separate provision of the FDCPA: § 1692g(a)(1). *See* 214 F.3d at 875–76. That provision requires debt collectors to send the consumer a written notice containing "the amount of the debt." 15 U.S.C. § 1692g(a)(1). The dunning letter in *Miller* stated the unpaid principal balance, but added that "this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges." 214 F.3d at 875. The letter also stated that the amount owed "changes daily." *Id.* We held that this letter violated § 1692g(a)(1) because the unpaid principal balance "is only a part of the debt" and the statute requires debt collectors "to state the total amount due—interest and other charges as well as principal—on the date the dunning letter [is] sent." *Id.* at 875–76.

We further held that the defendants were not excused from complying with § 1692g(a)(1) simply because the amount owed changed daily. However, "in an effort to minimize litigation," we fashioned the following safe harbor language for debt collectors to use if the amount owed is variable:

> As of the date of this letter, you owe $___ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check

for collection. For further information, write the under-
signed or call 1-800-[phone number].

*Id.* at 876 (alterations in original). Debt collectors are not *re-
quired* to use this language. *Id.* However, "[a] debt collector
who uses this form will not violate the 'amount of debt' pro-
vision, provided, of course, that the information he furnishes
is accurate and he does not obscure it by adding confusing
other information (or misinformation)." *Id.* Assuming this
"essential qualification" is met, a debt collector who uses this
language "will as a matter of law have discharged his duty to
state clearly the amount due." *Id.*

Because the *Miller* decision only addressed § 1692g(a)(1),
we have not previously addressed whether the safe harbor
language also immunizes debt collectors from liability under
§ 1692e. However, most district courts in this Circuit have
concluded that it does. *See, e.g.*, *Washington v. Portfolio Recovery
Assocs., LLC*, 211 F. Supp. 3d 1041, 1051–52 (N.D. Ill. 2016);
*Wilder v. J.C. Christensen & Assocs., Inc.*, No. 16-cv-1979, 2016
WL 7104283, at *4 (N.D. Ill. Dec. 6, 2016); *Tilmon v. LVNV Fund-
ing, LLC*, No. 12-cv-734-WDS, 2014 WL 335234, at *3 (S.D. Ill.
Jan. 30, 2014); *but see O'Chaney v. Shapiro & Kreisman, LLC*, No.
02-cv-3866, 2004 WL 635060, at *4 (N.D. Ill. Mar. 29, 2004).

We agree with the majority of district courts that have ad-
dressed the issue for two reasons. First, the two statutory pro-
visions at issue sometimes overlap: § 1692g(a)(1) requires
debt collectors to state "the amount of the debt," and
§ 1692e(2) prohibits debt collectors from making a "false rep-
resentation of … the character, amount, or legal status of any
debt." 15 U.S.C. §§ 1692g(a)(1), e(2). Thus, it makes sense to
consider *Miller*'s safe harbor protection where, as here, plain-

tiffs allege that the debt collector violated § 1692e by misrepresenting the amount of the debt "in a manner identical to a Section 1692g claim." *Wilder*, 2016 WL 7104283 at *4. Second, "*Miller* would not offer much of a safe harbor if this language (or its equivalent) subjected debt collectors to liability under a different FDCPA provision as 'misleading' or 'deceptive' on its face." *Id.*; *see also Washington*, 211 F. Supp. 3d at 1051–52 ("[I]t would be inappropriate to hold that Defendants violated [§ 1692e] where they used the precise language that the Seventh Circuit has instructed creditors to use in cases where [the debt is variable].").

However, even if a debt collector may generally rely on the safe harbor language to avoid liability under § 1692e, *Miller*'s accuracy requirement still applies. As we explained in *Miller*, a debt collector is only entitled to safe harbor protection if "the information he furnishes is accurate and he does not obscure it by adding confusing other information (or misinformation)." 214 F.3d at 876. And, although the *Miller* language is not misleading or deceptive on its face, it may nevertheless be inaccurate under certain circumstances. *See, e.g.*, *Ruge v. Delta Outsource Grp., Inc.*, No. 15-cv-10865, 2017 WL 959017, at *3 (N.D. Ill. Mar. 13, 2017) (holding that, although "[the defendant's] letter is nearly identical to the safe harbor language in *Miller*," the defendant was not immune from liability because "[t]he safe harbor language that says the amount of the debt might change because of interest was not true in this particular case") (footnote omitted). Here, FSGB's use of the safe harbor language was inaccurate because FSGB could not lawfully impose "late charges and other charges." Therefore, FSGB is not entitled to safe harbor protection under *Miller*.

In support of its position to the contrary, FSGB relies heavily on a single statement—indeed, a single word—in *Chuway v. Natl's Action Fin. Servs., Inc.*, 362 F.3d 944 (7th Cir. 2004). Unlike the variable debt at issue in *Miller*, the debt at issue in *Chuway* was fixed. *Id.* at 947. Accordingly, we concluded that *Miller* was "not on point." *Id.* Although the debt in *Chuway* was fixed, the dunning letter encouraged the debtor to call to obtain their "most current balance information." *Id.* We concluded that this statement was confusing because it suggested to the consumer that the defendant was trying to collect additional debt. *Id.* at 947–48. After reaching this conclusion, we advised debt collectors who are collecting fixed debts to simply state the amount due and "stop[] there, without talk of the 'current balance.'" *Id.* at 949. We continued: "If, instead, the debt collector is trying to collect the listed balance plus the interest running on it or other charges, he should use the safe-harbor language of *Miller*." *Id.* FSGB argues that this sentence, and in particular the word "or," advises debt collectors to use the safe harbor language "any time there is reason for the amount owed to increase in the future, whether due to interest, late charges, other charges, or some combination thereof."

Admittedly, debt collectors may have followed our guidance in *Chuway* in a good-faith attempt to comply with the FDCPA. However, this statement was dicta because we concluded that *Miller* did not apply to the fixed debt in *Chuway*. Moreover, our statement in *Chuway* must be read in conjunction with *Miller*, which explained that a defendant is not entitled to safe harbor protection if it provides inaccurate information. In any event, our judicial interpretations cannot override the statute itself, which clearly prohibits debt collectors from making false and misleading misrepresentations. *See Oliva v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 864 F.3d 492,

500 (7th Cir. 2017) (acknowledging debt collectors' good faith reliance on our precedent, but explaining that "the controlling law is and always has been the statute itself" and "the statute remains the law even if judges err"). Thus, FSGB's reliance on *Chuway* is not persuasive.

At bottom, FSGB argues that debt collectors should be able to copy and paste the *Miller* safe harbor language to avoid liability under § 1692e, regardless of whether that language is accurate under the circumstances. This argument fails for two reasons. First, "[a]lthough the safe harbor was offered in an attempt both to bring predictability to this area and to conserve judicial resources, it is compliance with the statute, not our suggested language, that counts." *Williams*, 505 F.3d at 680. As explained above, FSGB's letter fails that decisive test because it is false and misleading to an unsophisticated consumer. Second, debt collectors are required to tailor boilerplate language to avoid ambiguity. *See Lox*, 689 F.3d at 825 (holding that the dunning letter would violate § 1692e even if it was "a form letter"). If they fail to do so, they run the risk of liability. *See id.* ("When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril." (quoting *Gonzalez v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1063 (9th Cir. 2011))).

In sum, debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances. Therefore, the district court erred by dismissing plaintiffs' claims on this ground.

### C.  Plaintiffs Did Not Forfeit Their § 1692g(a)(1) Claim

The final issue is whether plaintiffs have forfeited their claim under § 1692g(a)(1). FSGB argues that plaintiffs abandoned this claim on appeal because their issue statement does not reference it and they dedicate just one paragraph of their opening brief to it.

FSGB is wrong. As explained above, the claims under § 1692e and § 1692g(a)(1) overlap because plaintiffs allege that FSGB violated both provisions by misrepresenting the amount of the debt. Thus, as plaintiffs point out, their discussion of whether the statement was misleading under § 1692e "goes hand-in-hand with whether the amount of the debt has been accurately disclosed" under § 1692g(a)(1). Moreover, the safe harbor analysis is the same because, as FSGB argues in its briefing, *Miller* applies equally to claims brought under both provisions. Therefore, plaintiffs have not forfeited their claims under § 1692g(a)(1). For the reasons outlined above, plaintiffs have stated a claim under both § 1692g(a)(1) and § 1692e.

### III. Conclusion

For the foregoing reasons, we REVERSE the judgment of the district court.